KING, Circuit Judge:
 

 Thomas Sparks was convicted of capital murder and sentenced to death in Louisiana trial court. Sparks attempted to secure a new trial by subpoenaing a federal officer, Gordon Gsell, who allegedly could show that a key prosecution witness had been biased against Sparks as a result of undisclosed plea negotiations with state and federal officials. Gsell removed the state court subpoena proceedings to federal court under 28 U.S.C. § 1442(a). This is a consolidated appeal from both the district court's dismissal of the removal for lack of prosecution (No. 91-3118) and the court’s subsequent denial of Spark’s Rule 60(b) motion urging the court to reconsider its dismissal (No. 91-3592).
 

 Finding that the case was properly removed under 28 U.S.C. § 1442(a), we hold that the district court did not abuse its discretion by dismissing this case for lack of prosecution. Nevertheless, we believe that the court did abuse its discretion by failing to grant Spark’s Rule 60(b)(1) motion for relief from judgment. The extremely confusing procedural posture of the § 1442(a) removal in this case excused Sparks’ arguably mistaken belief that the Government had the burden to re-urge Gsell’s motion to quash once the subpoena proceedings were removed.
 

 However, we hold that any error in denying Sparks’ Rule 60(b) motion was in effect harmless. We hold that the doctrine of sovereign immunity requires that the subpoenas be quashed and the subpoena proceedings be dismissed.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 In 1988, after being sentenced to death in the 21st Judicial District Court for the Parish of Livingston, Louisiana, Sparks moved for a new trial on the basis of a
 
 Giglio
 
 claim.
 
 [1]
 
 Sparks alleged that one of the State’s key witnesses, Annie Broadway, had been biased against Sparks as a result of undisclosed plea negotiations, including a threat of revoking Broadway’s parole. Sparks claimed that Broadway’s federal
 
 *229
 
 probation officer, Gordon Gsell, likely had pertinent information about such negotiations.
 

 On November 15, 1988, Sparks’ defense counsel wrote a letter to the local United States Attorney
 
 [2]
 
 and requested that Gsell be permitted to produce and testify about all parole records pertaining to Broadway and Sparks. Before the United States Attorney could respond to Sparks’ request, however, the Louisiana trial court on November 30th issued a subpoena duces te-cum, which was served the same day, ordering Gsell to appear with the requested materials on February 16, 1989, at a hearing on Spark’s motion for a new trial. Shortly thereafter, a subpoena ad testifi-candum was also issued and served on Gsell. In early 1989, the United States Attorney, on behalf of Gsell, filed a motion to quash the subpoenas in state court. The United States Attorney argued that federal statutes,
 
 [3]
 
 federal regulations,
 
 [4]
 
 and federal common law doctrine
 
 [5]
 
 prevented the state court from requiring Gsell to disclose or testify about the parole files. On February 9, 1989, the state trial judge ordered a continuance in the hearing on Spark’s motion for a new trial and, as a result, the return date on the original subpoenas passed. The judge ordered that the subpoenas tecum would be “enforced and reissued” at whatever future date the hearing on the motion for new trial would be held.
 

 On February 16, 1989, the state trial court held a hearing on Gsell’s motion to quash the subpoenas. On March 28, the state judge rejected the United States Attorney’s arguments and ordered Gsell to comply with the subpoenas. On April 7 and 18, on behalf of Gsell, the U.S. Attorney filed a petition and amended petition to remove the subpoena proceedings to federal court under 28 U.S.C. § 1442(a), the “federal officer protection” removal statute.
 
 [6]
 
 The federal district court assumed jurisdiction over the matter. On May 24, 1989, Sparks filed a motion to remand to state court, arguing that Gsell had failed to remove in a timely manner. On July 19, 1989, the federal district court denied Spark’s motion to remand.
 

 During the eight months following removal, neither the district court, Sparks, nor Gsell did anything further with respect to the subpoena proceedings. Finally, on March 11,1990, the federal district court in writing warned both Sparks and Gsell that unless either party took some further action within two weeks, the case would be dismissed for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Neither party responded and, on April 3, 1990, the court dismissed the case.
 

 On May 10, 1990, the state trial judge notified counsel for Sparks that she had until June 1, 1990, to reissue the subpoenas. On May 22, 1990, Sparks requested that the state trial court set a new hearing date on Spark’s motion for a new trial and also reissue the subpoenas to Gsell. The
 
 *230
 
 court scheduled the hearing for August 9, 1990.
 

 On May 30, 1990, on behalf of Gsell, the United States Attorney, filed in federal district court a motion to reopen the dismissed case, which was granted. The United States Attorney also requested that the federal court declare any reissued subpoenas to be null and void as a result of the
 
 res judicata
 
 effect of the prior dismissal for lack of prosecution. While the federal district court had the matter under consideration, the state trial court reissued the subpoenas on September 14, 1990; Gsell refused service of them on September 25, 1990. The state trial court then agreed to grant a continuance in the state proceedings until disposition of the reopened federal proceedings.
 

 On January 4, 1991, the federal district court ruled that the April 3, 1990 dismissal had been both on the merits and with prejudice — and thus had
 
 res judicata
 
 effect with regard to any subsequent subpoenas, including those issued in September 1990. From that order and from a denial of his Rule 60(b) motion, Sparks appeals.
 

 II. REMOVAL JURISDICTION
 

 At this court’s request, the parties were asked to supplementally brief two questions regarding whether the district court had proper removal jurisdiction: i) whether Gsell’s removal after the return date on the original set of subpoenas had passed deprived him of a basis for removal under state law; and ii) whether Gsell’s removal under § 1442(a), prior to the initiation of contempt proceedings, was premature. We will address the two issues in turn.
 

 A. Did the “expiration” of the first set of subpoenas prior to removal deprive Gsell of a legal basis, under Louisiana law, from which to remove to federal court?
 

 The first set of subpoenas issued and served on Gsell required that he appear at Spark’s motion for new trial originally scheduled for February 16, 1989. Because the state trial judge postponed the hearing on Sparks’ motion for a new trial once Gsell filed his motion to quash, the subpoenas’ return date of February 16th had passed by the time that Gsell removed the case to federal court in April 1989. The second set of subpoenas was issued over a year later in September 1990. Gsell did not technically remove the state court proceedings regarding the second set of subpoenas but instead simply reopened the federal proceedings regarding the original subpoenas, which had earlier been dismissed for lack of prosecution.
 

 At oral argument, the following question was raised: whether, because the original February 16, 1989 return date seemingly “expired” before the case was removed, the subpoenas were a dead letter and removal was thus improper. This issue requires that we examine the legal effect, under Louisiana law, of a subpoena whose return date has passed as a result of a continuance in the proceedings.
 

 Sparks argues that under Louisiana law the postponement of the February 16, 1989 hearing on his motion for a new trial, to which Gsell had been subpoenaed, rendered the original set of subpoenas a legal nullity. Sparks cites as authority a 1977 Louisiana Supreme Court case,
 
 State v. Passman,
 
 345 So.2d 874 (La.1977). In
 
 Pass-man,
 
 the trial court in a criminal case rejected the defendant’s motion for a continuance in a hearing on a motion for a new trial based on the absence of two material witnesses. The hearing on previous occasions had been postponed for other reasons. In originally scheduling the hearing, the trial court had, at the defendant’s request, issued subpoenas ordering the two witnesses to appear. Defense counsel, however, failed to request a reissuance of subpoenas after the first hearing was postponed. The Louisiana Supreme Court held that the trial court did not err in denying the requested continuance in the hearing on the motion for a new trial because the absence of the two material witnesses resulted from the failure of defense counsel to request the reissuance of subpoenas.
 
 Id.
 
 at 886.
 

 . Sparks argues that
 
 Passman
 
 implies that a subpoena becomes a legal nullity
 
 *231
 
 when its return date passes because of a continuance ordered by a trial court. We disagree. In
 
 Passman,
 
 all that was at issue was the denial of a continuance. The Louisiana Supreme Court simply held that because the defense failed to seek a reis-suance of the subpoenas whose return dates had passed, it could not rely on the witnesses’ absence as grounds for a continuance.
 

 In another Louisiana Supreme Court case decided after
 
 Passman,
 
 which Gsell cites, the court held that “the duty to respond to a subpoena is a ‘continuing duty’____”
 
 In re Grand Jury Subpoenas,
 
 363 So.2d 651, 654 (La.1978). In that case, witnesses who appeared on the date specified in their subpoenas argued that they should not be held in contempt for failing to return on proceeding days, which were not specified in their subpoenas. They contended that because Article 733 of the Louisiana Code of Criminal Procedure did not specify that a witness must attend a legal proceeding “until discharged,” attendance on the single day specified in the subpoena was all that was required under law. The Louisiana Supreme Court rejected this argument. Until the trial court releases a witness who has been subpoenaed, the state supreme court held, there is a “continuing duty” of compliance, irrespective of the return date mentioned in a subpoena.
 
 Id.
 
 at 654-55. It is undisputed that Gsell was never discharged from his obligation to comply with the original subpoenas.
 

 Thus, we hold that the original set of subpoenas issued to Gsell did not self-destruct after the passage of February 16, 1989. Because there was a “continuing duty” under Louisiana law to comply with the subpoena, the subpoenas were not spent for purposes of removal under § 1442(a). Although a second set of subpoenas were issued over a year later, under Louisiana law they were nothing more than a reissuance of the original set of subpoenas over which the district court had removal jurisdiction.
 
 [7]
 

 B. Was Gsell’s removal under 28 U.S.C. § 1442 premature?
 

 28 U.S.C. § 1442(a) provides, in pertinent part:
 

 a civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) any officer of the United States or any agency thereof, or person acting under him, for any act under the color of such office____
 

 We first note that it is well settled that the initiation of contempt proceedings — based on a failure to comply with a subpoena — qualifies as a state court “action” for purposes of § 1442(a).
 
 See, e.g., State of Wisconsin v. Schaffer,
 
 565 F.2d 961 (7th Cir.1977) (§ 1442 removal after state court issued order to show cause why federal officer refusing to comply with subpoena should not be held in contempt). Furthermore, such contempt proceedings need not be against parties in the underlying state case in order to fall within the ambit of the removal statute.
 
 See, e.g., State of Florida v. Cohen,
 
 887 F.2d 1451 (11th Cir.1989) (§ 1442 removal by non-party federal officer who was subpoenaed in state criminal action). Thus, the only issue is whether the removal of this case prior to the formal initiation of state court contempt proceedings against Gsell for his non-compliance with the subpoenas was premature.
 

 
 *232
 
 Sparks argues that federal removal jurisdiction does not exist because Gsell had simply been ordered to comply with the subpoenas and had not yet been held in contempt. The United States responds that, while there may have been no formal contempt proceedings initiated at the time of removal, the issuance of a subpoena under Louisiana law is sufficient to trigger the operation of § 1442(a) if a federal officer refuses to comply as a result of a federal duty. The United States Attorney representing Gsell makes what is in essence a policy argument: Without the option of removal after the mere issuance of a subpoena, a federal officer such as Gsell would be forced to violate a state court order — and risk contempt sanctions— in order to comply with a federal duty. This argument is premised on a peculiarity of Louisiana law, which, unlike most states,
 
 [8]
 
 permits a state judge to hold a person in contempt for willful failure to comply with a subpoena without first requiring an “order to show cause” why a contempt citation should not issue.
 
 See
 
 La.Code Crim.Pro. arts. 21, 22; La.Code Civ.Pro. arts. 222, 223.
 
 [9]
 

 Although the existing authority on this issue is hardly clear, we think that the United States has the better argument. We first note that the Supreme Court has for over two decades required a liberal interpretation of § 1442(a) in view of its chief purpose — to prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so.
 
 See Willingham v. Morgan,
 
 395 U.S. 402, 406-07, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969). We adopt such a liberal interpretation in the instant case.
 

 In Gsell’s case, the Louisiana trial judge possessed the statutory authority to issue Gséll a “direct” contempt citation forthwith once Gsell made it clear that he would not comply with the subpoenas. To require Gsell run the risk of a contempt citation— not to mention fines or incarceration — simply because he complies with his federal duty would be imprudent and defeat the larger purpose of the federal officer protection removal statute. We note that at least one other circuit had adopted a similar approach in an analogous case.
 
 See Nationwide Investors v. Miller,
 
 793 F.2d 1044 (9th Cir.1986) (summons of a federal official to state court garnishment proceedings sufficient to trigger § 1442(a), even though no contempt proceedings underway).
 

 We caution, however, that our liberal construction of § 1442(a) is actually limited to a narrow set of circumstances— namely, situations such as the one that confronted Gsell as a result of a peculiarity of Louisiana law, which provides for no meaningful delay between a party or witness’ refusal to comply with a subpoena and the state court’s right to hold the party or witness in contempt. Because Louisiana law requires no significant time lag that permits a subpoenaed federal officer facing the prospect of a contempt citation to remove to federal court,
 
 [10]
 
 we believe that the mere issuance of a Louisiana state court
 
 *233
 
 subpoena to a federal officer such as Gsell triggers § 1442(a).
 
 [11]
 

 III. THE MERITS
 

 A. The district court’s dismissal for lack of prosecution and denial of Sparks’ Rule 60(b) motion
 

 As discussed in
 
 supra
 
 Part I, because of lack of prosecution, the district court
 
 sua sponte
 
 dismissed the case on April 3, 1990. On May 30, 1990, following the state court’s threat to reissue the subpoenas, the' district court reopened the case and held that its April 3rd dismissal was with prejudice and that any subsequent subpoenas were barred under
 
 res judicata.
 
 The court also denied Sparks’ Rule 60(b) motion which claimed that Sparks’ failure to prosecute was based on a good faith mistake.
 

 The district court did not err in dismissing with prejudice for lack of prosecution. After all, the subpoena proceedings sat idle for over eight months following removal. Moreover, the district court gave the parties warning prior to dismissal that if neither did anything, the case would be dismissed in two weeks. There was no abuse of discretion.
 
 See Link v. Wabash Railroad Co.,
 
 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (appellate review of dismissal for lack of prosecution governed by abuse-of-diseretion standard).
 

 However, once the parties joined issue over Sparks’ 60(b)(1) motion, and it became apparent .that the reason that the case sat idle for eight months was its confusing procedural posture, we think that the district court did abuse its discretion by failing to reinstate the case. Sparks contended in his Rule 60(b) motion that he was under the mistaken impression that because Gsell was the party that removed — for the obvious purpose of quash1 ing the pre-existing state court subpoenas — Gsell had the burden to “prosecute” by seeking to quash the subpoenas. The district court concluded that “[i]t was understandable that Sparks would believe that the United States had the initial burden in the federal court of seeking dissolution of the state court order that the subpoenas be issued.” However, the district court concluded, because Sparks was the party ultimately seeking enforcement of the subpoenas, he was the nominal plaintiff and any dismissal with prejudice would operate against his interests.
 

 We believe that it is certainly debatable who had the burden to prosecute in the peculiar procedural posture of this case. If Sparks’ failure to prosecute was a mistake — and it may have been — it was understandable. At oral argument on the § 1442(a) removal issue,
 
 see supra
 
 Part II, the complex nature of the strange procedural and jurisdictional animal created by Gsell’s removal in this case became quite apparent. Therefore, we cannot fault counsel for Sparks for failing to under
 
 *234
 
 stand that Sparks may have had the burden to prosecute, as the Government removed for the purpose of quashing the subpoenas prior to the commencement of contempt proceedings.
 

 Federal Rule of Civil Procedure 60(b)(1) expressly holds that the court may relieve a party from final judgment or order on the grounds of “mistake, inadvertence, surprise, or excusable neglect.” We review a district court’s refusal to grant Rule 60(b) relief for abuse of discretion.
 
 See Smith v. Alumax Extrusions, Inc.,
 
 868 F.2d 1469, 1471 (5th Cir.1989). We believe that failure to grant Sparks’ motion was an abuse of discretion in view of Sparks’ excusable neglect. However, as we will discuss below, although Sparks has won the. battle, he' has lost the war.
 

 B. .Sovereign Immunity
 

 In a memorandum in support of his state court motion to quash, Gsell cited,
 
 inter alia,
 
 both Justice Department and Parole Commission regulations governing the disclosure of confidential information, 28 C.F.R. §§ 2.56, 16.21
 
 et seq.,
 
 as well as the common law doctrine embodied in
 
 United States ex rel. Touhy v. Ragen,
 
 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), as grounds for quashing the state court’s subpoenas. Section 16.21
 
 et seq.
 
 is the regulatory scheme governing the release of information by employees or agents of the United States Justice Department. As the Supreme Court has long held, such regulations unquestionably give Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of confidential files when the United States is not a party to a legal action.
 
 See Touhy,
 
 340 U.S. at 470, 71 S.Ct. at 420 (referring to regulatory precursor of .§ 16.21
 
 et seq.); see also Boske v. Comingore,
 
 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900) (approving of analogous Treasury Department regulations).
 

 At least two provisions of the Justice Department regulations) which are decrees from the United States Attorney General, were applicable in Gsell’s case: i) “In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information or produce any material acquired as a part of the performance of that person’s official duties____ without prior approval of the proper Department official ...,” 28 C.F.R. § 16.22(a);
 
 [12]
 
 and ii) “no Justice Department official may disclose materials if such disclosure would violate a [federal] statute ... [or specific regulation],”
 
 id.
 
 § 16.26(b)(1) & (2).
 
 [13]
 
 Furthermore, a Parole Commission regulatory provision, 28 C.F.R. § 2.56, provides that no records of the Commission may be disclosed except “upon proof of authorization from the prisoner or parolee concerned.”
 
 [14]
 

 It is beyond argument that unless expressly waived, sovereign immunity exists as the rule, not the exception.
 
 See United States v. Mitchell,
 
 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (“A waiver of sovereign immunity ‘cannot be implied but must' be unequivocally expressed.’ ”) (citation omitted);
 
 Larson v. Domestic & Foreign Commerce Corp.,
 
 337 U.S. 682, 688-89, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1948). There is no indication that the United States Government has waived its sovereign immunity with respect to the state court subpoenas
 
 *235
 
 issued to Gsell. Indeed, the Justice Department and Parole Commission administrative provisions evince an intent
 
 not
 
 to waive the Justice Department’s sovereign immunity in a case such as the instant one.
 
 [15]
 

 “Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of ... subject matter jurisdiction, in that unless sovereign immunity is waived, there may be no consideration, of the subject matter.”
 
 J. C. Driskill, Inc. v. Abdnor,
 
 901 F.2d 383, 385 n. 4 (4th Cir.1990) (citing
 
 Hans v. Louisiana,
 
 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Accordingly, myriad cases in-, volving a § 1442(a) removal of a state subpoena proceeding against an unwilling federal officer have held that the sovereign immunity doctrine bars enforcement of the subpoena.
 
 [16]
 
 These courts have quashed state court subpoenas or dismissed contempt proceedings that were removed on the ground that a court, state or federal, lacks .jurisdiction to enforce a subpoena against an unwilling sovereign.
 
 See, e.g., Swett v. Schenk,
 
 792 F.2d at 1451-52 (“[T]he
 
 Touhy
 
 doctrine is jurisdictional and precludes a contempt
 
 action____Sharon Lease,
 
 691 F.Supp. at 385 (“[T]he state court had no jurisdiction to .compel a non-party federal official to testify or produce documents absent a waiver of sovereign immunity.”).
 
 See generally Giza v. Secretary of Health, Education & Welfare,
 
 628 F.2d 748, 752 (1st Cir.1980) (“[W]e are aware of no authority ... plac[ing] an affirmative obligation on, and vesting] jurisdiction in, a federal court to enforce a state court subpoena.... [T]he prerogative of a federal court to enforce state process absent specific authorization remains doubtful.”).
 

 Not only did Gsell invoke sovereign immunity in state court, but, according to the United States Attorney on appeal, “[t]he United States has maintained throughout the entirety of these proceedings that the only court with ... original jurisdiction [over the disclosure issue] would be the federal district court.”
 
 [17]
 
 Furthermore, even if Gsell had never asserted sovereign immunity in any court, “[it] may be asserted at any stage of the proceedings, either
 
 *236
 
 by the parties or by the court on its own motion.”
 
 Bank One, Texas, N.A. v. Taylor,
 
 970 F.2d 16, 34 (5th Cir.1992) (citing cases) (emphasis added).
 

 Therefore, rather than remanding to the district court to allow Sparks to seek enforcement of the subpoenas, we believe that the subpoenas should be' quashed and this case should be dismissed on sovereign immunity grounds.
 
 [18]
 

 IV. -CONCLUSION
 

 For the foregoing reasons, we AFFIRM the district court’s dismissal for lack of prosecution (No. 91-3118) and REVERSE the district court’s denial of Sparks’ Rule 60(b)(1) motion (No. 91-3592). We REMAND to the district court with instructions to quash the subpoenas and dismiss the case. Costs shall be borne by Sparks.
 

 [1]
 

 .
 
 See Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecution's withholding of evidence of promise of leniency to witness ground for new trial).
 

 [2]
 

 . The U.S. Attorney has served as counsel for Gsell throughout the subpoena proceedings in both state and federal court.
 

 [3]
 

 .
 
 See
 
 Privacy Act, 5 U.S.C. § 552a
 
 et seq.;
 
 Freedom of Information Act, 5 U.S.C. § 552
 
 et seq.
 

 [4]
 

 . 28 C.F.R. § 16.21
 
 et seq.
 
 (Justice Department regulations regulating disclosure of departmental information); 28 C.F.R. § 2.56(a) (United States Parole Commission regulations forbidding disclosure of confidential parole files without convict’s consent). The United States Parole Commission, for which Mr. Gsell was an agent in maintaining Broadway and Spark’s parole files, see 18 U.S.C. § 3655 (since repealed), was a component of the United States Justice Department prior to the Parole Commission’s recent dismantling. See
 
 United States v. Smith,
 
 686 F.Supp. 1246, 1248 (W.D.Tenn.1988) (although prospectively abolished by 1987 legislation creating U.S. Sentencing Commission, Parole Commission, an agency within the Justice Department, still in operation until 1992).
 

 [5]
 

 .
 
 See United States ex rel. Touhy v. Ragen,
 
 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In
 
 Touhy,
 
 the Court held that the precursor of the Justice Department regulations cited in
 
 supra
 
 note 5 was valid and that a court could not enforce a subpoena against a Justice Department employee who had been ordered by departmental superiors not to comply with the subpoena.
 
 See id.
 
 at 469-70, 71 S.Ct. at 420.
 

 [6]
 

 . Removal was limited to the state court proceedings relating to Gsell’s subpoenas. The underlying death penalty case itself, including Sparks’ motion for a new trial, remains pending in the Louisiana courts.
 

 [7]
 

 . The "continuing duty” to comply with a subpoena after the return date passes is implicitly recognized in a 1988 amendment to the provision of the Louisiana Code of Civil Procedure governing-subpoenas. See Art. 1355.1. That provision "Reissuance of Subpoena,” states that a reissuance of a subpoena "due to [a] coritinuance'or passage of the trial or hearing” may be effected by mailing a copy of the original subpoena and a notice of the new return date to the witness. That is, there is no need to issue1 .a separate subpoena. Although this provision is in the code of civil procedure, the court in
 
 In re Grand Jury Subpoenas
 
 treated the provision's of the civil and criminal procedure codes governing subpoenas as being essentially interchangeable.
 
 See
 
 363 So.2d at 654.
 

 [8]
 

 .
 
 See, e.g.,
 
 Wis.Stat. §§ 295.01, 295.03(1), discussed in
 
 Schaffer,
 
 565 F.2d at 961.
 

 [9]
 

 . Louisiana law distinguishes between "direct” and "constructive” contempt. Only the former may be punished without a prior "order to show cause.” Furthermore, a judge cannot impose "constructive” contempt sanctions without conducting a formal hearing or trial on the contempt issue and also waiting forty-eight hours between the imposition of the contempt order and the order to show cause.
 
 See
 
 La.Code Crim.Pro. arts. 23, 24; La.Code Civ.Pro. arts. 224, 225. There is neither such a formal hearing requirement nor a forty-eight hour delay requirement for issuance of a "direct” contempt order. The only procedure required for punishing "direct” contempt is "an opportunity to. be heard orally by way of defense or mitigation."
 
 See
 
 La.Code Crim.Pro. art. 22; La.Code Civ.Pro. art. 223.
 

 Both the criminal and civil codes explicitly classify "contumacious failure to comply with a subpoena or summons” as "direct” contempt.
 
 See
 
 La.Code Crim.Pro. art. 21(2); La.Code Civ. Pro. art. 222.
 

 [10]
 

 . We do not reach the question of whether a state statute requiring an "order to show cause,” which in certain cases will occasion significant delay before a contempt order may be issued, will prevent removal immediately following issuance of a subpoena. We only note that in Gsell’s case no meaningful delay was required •under Louisiana law.
 
 Cf. Schaffer,
 
 565 F.2d at 693 (discussing Wisconsin's subpoena statute which requires order to. show cause).
 

 [11]
 

 . We note that, in this case, Gsell did not immediately remove to federal court after being served with the subpoenas. Rather, he first filed a motion to quash in state court. While one could interpret this action as evincing a willingness on Gsell’s part to try his luck in state court — thus constituting waiver of his right to remove until actually being cited for contempt — we accept Gsell’s argument that he filed the motion to quash, which invoked various federal defenses, out of a genuine concern for federal-state comity.
 
 See Herman, Herman & Katz v. Olano,
 
 No. 84-1653, slip op. at 5 (E.D.La. May 25, 1984) ("By filing his motion [to quash] in state court [before removing under § 1442], the U.S. Attorney was merely respecting comity between the federal systems, and seeking a favorable ruling in state court that would avoid a confrontation between the two.”). This concern for comity is in keeping with well-settled judicial policy.
 
 Cf. Younger v. Harris,
 
 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (federal courts should ordinarily abstain from interfering with state court criminal prosecutions);
 
 Picard v. Connor,
 
 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (constitutional claim raised on federal habeas corpus must first be presented to state court).
 

 We reject Sparks’ argument that Gsell did not comply with the 30-day removal requirement in 28 U.S.C. § 1446(b) by removing in excess of 30 days from the date of the issuance of the subpoenas. Assuming Gsell somehow violated § 1446(b)’s 30-day removal requirement, without deciding that, we note that Sparks waived the right to object to such a non-jurisdictional defect,
 
 see Leininger v. Leininger,
 
 705 F.2d 727, 729 (5th Cir.1983), because Sparks did not make this argument in his motion to remand to state court until 36 days after Gsell’s removal.
 
 See
 
 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal____’’).
 

 [12]
 

 . The United States Attorney for the relevant jurisdiction, on behalf of the Attorney General, is charged with determining whether the requested materials should be disclosed. §§ 16.-22(b), 16.24(a).
 
 See Automated Mailing & Processing, Inc. v. Cost Containment, Inc.,
 
 922 F.2d 835 (table) (4th Cir.1991) 1991 WL 806, 1991 U.S.App. LEXIS 332, 1991-1 Trade Cas. (CCH) ¶ 69,292;
 
 United States v. Bizzard,
 
 674 F.2d 1382, 1387 (11th Cir.1982). In the instant case, the United States Attorney represents Gsell.
 

 [13]
 

 . Gsell cited the Privacy Act, 5 U.S.C. § 552a
 
 et seq.,
 
 and Freedom of Information Act, 5 U.S.C. § 552
 
 et seq.,
 
 as statutes that would be violated by the requested disclosure. Gsell also cited a regulation governing the United States Parole Commission, discussed
 
 infra.
 

 [14]
 

 . The Parole Commission regulation obviously does not apply to Sparks' request for his own parole file, although the Justice Department regulations do apply.
 

 [15]
 

 . The state trial court believed that 5 U.S.C. § 552a(b)(ll) — which makes an exception to the Privacy Act’s general proscription of disclosure of material protected under that Act if "a court of competent jurisdiction” orders disclosure — was evidence of a sweeping waiver of sovereign immunity. There is no indication that this exception to the Privacy Act’s normal operation evinces congressional intent to broadly waive the sovereign immunity of agencies such as the Justice Department when ordered to comply with state court subpoenas. Rather, § 552a(b)(11) is simply an exception to the operation of the Privacy Act. In any event, in the instant case that exception is inoperative because in the present procedural posture of the case, no court — state or federal — possesses jurisdiction to enforce a state court subpoena. Section 552a(b)(ll), however, would be applicable should Sparks institute a federal cause of action under the Administrative Procedure Act or the Freedom of Information Act.
 
 See infra
 
 note 18.
 

 [16]
 

 .
 
 See, e.g., Automated Mailing & Processing Systems, Inc. v. Coast Containment, Inc., 922
 
 F.2d 835 (table), 1991 WL 806, 1991 U.S.App. LEXIS 332, 1991-1 Trade Cas. ¶ 69,292 (4th Cir. 1991) (involving Justice Department regulations);
 
 Boron Oil Co. v. Downie,
 
 873 F.2d 67, 69-70 (4th Cir.1989);
 
 Swett v. Schenk, 792
 
 F.2d 1447, 1451 (9th Cir.1986) (citing
 
 Ex Parte Sackett,
 
 74 F.2d 922, 923 (9th Cir.1935));
 
 State of Kansas v. Call,
 
 760 F.Supp. 190, 192 (D.Kan. 1991),
 
 aff’d,
 
 961 F.2d 220 (10th Cir.1992) (involving Justice Department regulations);
 
 In re: Complex Blood Litigation,
 
 1991 U.S.Dist. LEXIS 4954 (N.D.Cal. April 8, 1991);
 
 Moore v. Armour Pharmaceutical Co.,
 
 129 F.R.D. 551, 555 (N.Da. Ga.) (dicta),
 
 aff’d,
 
 927 F.2d 1194 (11th Cir.1991);
 
 Sharon Lease Oil Co. v. FERC,
 
 691 F.Supp. 381, 385 (D.D.C.1988);
 
 Environmental Enterprises, Inc. v. EPA,
 
 664 F.Supp. 585, 586 & n. 1 (D.D.C. 1987) (citing cases);
 
 Reynolds Metals Co. v. Crowther,
 
 572 F.Supp. 288, 290-91 (D.Mass. 1982). However, for a cogent discussion criticizing the reliance of federal courts on the sovereign immunity doctrine in refusing to enforce state subpoenas,
 
 see
 
 Note, Gregory S. Coleman,
 
 Touhy
 
 and the Housekeeping Privilege: Dead But Not Buried?, 70 Tex.L.Rev. 685 (1992).
 

 [17]
 

 . In Gsell’s brief submitted to this Court, the U.S. Attorney goes beyond invoking sovereign immunity in making its jurisdictional argument and contends that the issuance of a state court subpoena requiring a federal officer to produce confidential federal information is preempted by the Freedom of Information Act and Privacy Act. In accord with the many other federal courts cited in
 
 supra
 
 note 16, we believe that it is more appropriate to refer to the jurisdictional bar in the instant case as falling under the sovereign immunity rubric rather than under the federal preemption rubric.
 

 [18]
 

 . We note that our dismissal on sovereign immunity grounds does not preclude Sparks from pursuing any administrative remedies that he may have.
 
 See Davis Enterprises v. EPA,
 
 877 F.2d 1181, 1184-88 (3rd Cir.1989);
 
 Automated Mailing,
 
 922 F.2d 835 (table), 1991 WL 806 at *1, 1991 U.S.App. LEXIS 332 at *5;
 
 Schenk,
 
 792 F.2d at 1452 n. 2.