**REVISED MARCH 1, 2018**
# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40146

United States Court of Appeals
Fifth Circuit

**FILED**
March 1, 2018

Lyle W. Cayce
Clerk

JANE DOE,

Petitioner - Appellee

v.

OFFICE OF REFUGEE RESETTLEMENT,

Respondent - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:

This case asks whether the Office of Refugee Resettlement ("ORR") is discharging its *federal* obligation to the benefit of an unaccompanied alien minor in refusing her access to Texas's judicial bypass regime for the purpose of an abortion—the sole basis of which hinges on Jane Doe's wishes.

I.

Based on the limited record before us, this case's path to our court appears as follows.

In late January 2018, Jane Doe, a pregnant minor, expressed an interest in obtaining an abortion to a "person interviewing her about her needs." That

No. 18-40146

person referred Jane Doe to a nonprofit organization that assists minors in Texas who are facing unplanned pregnancies and need help with legal issues, including access to judicial bypass. That nonprofit referred the matter to Myles Garza and Rochelle Garza of Garza & Garza Law, PLLC. The Garzas met with Jane Doe, who expressed her wish to obtain an abortion. In accordance with *that* wish, the Garzas filed papers with the state court to initiate judicial bypass proceedings, and the state court set a hearing for February 8.

ORR did not produce Jane Doe for the hearing. Thereafter, emails show that ORR advised the Garzas that Jane Doe no longer wanted to proceed with an abortion. Additionally, ORR provided the Garzas with hand-written notes, penned by Jane Doe, indicating that she "changed [her] decision to have an abortion" and that she no longer needed the Garzas' help because she did "not want to have an abortion." Emails also show the Garzas attempted to meet with Jane Doe, and ORR denied them access.

On February 8, the state court issued an order confirming Ms. Garza's appointment as Jane Doe's guardian ad litem and Mr. Garza's appointment as her attorney ad litem. The state court order provides that "any custodian of the child shall grant Attorney Ad Litem and Guardian Ad Litem immediate access to the child and to any information relating the child and shall fully cooperate with Attorney Ad Litem and Guardian Ad Litem." The state court order also requires "the custodian of any relevant records relating to the child, including records regarding social services, law enforcement records, school records, records of a probate or court proceeding, and records of a trust or account for which the child is a beneficiary, . . . [to] provide immediate access to the records to Attorney Ad Litem and Guardian Ad Litem without requiring a further order of release."

2

## No. 18-40146

ORR filed its notice of removal under 28 U.S.C. § 1442, which authorizes the removal of any civil action commenced in state court "that is against or directed to . . . [t]he United States or any agency thereof."[1] The district court denied removal.[2] ORR now petitions this Court for an emergency stay of the district court's order. Due to the time-sensitive nature of this inquiry, we elect to consolidate ORR's request for a stay with a determination of the merits of the removal question. For the reasons set forth below, we VACATE the district court's order and REMAND the action to the district court.

### II.

We gleaned the facts of this case from the limited papers presented to us. We pause to address a narrative that the special concurrence and dissent threads, one in which knavish, "agenda-driven" lawyers circumvent an irreproachable agency to prey upon an unaccompanied pregnant minor. The crucial fact—whether Jane Doe wishes to pursue an abortion—cannot be answered by needless judicial spin.

The special concurrence and dissent writes that "[s]everal weeks after entering ORR custody in an approved shelter, Doe *came into contact* with attorneys who had learned about her pregnancy," a characterization—likening Jane Doe's referral to the Garzas as some street encounter or worse, painting a picture of the Garzas wading through a sea of pregnant unaccompanied alien minors with a net—that ignores the statements of Jane Doe's lawyers, who serve as officers of the court subject to its rules of candor, regarding a nonprofit's referral of Jane Doe to the Garzas.[3]

---

[1] 28 U.S.C. § 1442(a)(1).

[2] *Jane Doe v. ORR*, No. 18–26 (S.D.T.X. Feb. 14, 2018).

[3] Jane Doe's lawyers submitted their brief in accordance with Fifth Circuit Local Rule 27.3, which requires parties filing emergency motions to "[c]ertify that the facts supporting emergency consideration of the motion are true and complete." 5TH CIR. L.R. 27.3.

No. 18-40146

ORR's Deputy Director for Children's Programs explains how ORR learned about the Garzas' representation of Jane Doe and initiation of a judicial bypass proceeding on her behalf. ORR's Deputy Director states: (1) "Through February 5, 2018, Ms. Doe did not request an abortion from [the shelter] or ORR;" (2) "On February 6, 2018, Attorneys Rochelle Garza and Myles Garza arrived at [the shelter], requested a meeting with Ms. Doe, and conducted that meeting in private. I am not aware of any previous contact between Ms. Doe and Attorneys Garza;" and (3) "On February 7, 2018, Ms. Garza contacted [the shelter] saying a state court hearing had been scheduled for Ms. Doe on the morning of February 8, 2018, and asking [the shelter] to transport Ms. Doe to that hearing."

The record presents conflicting narratives that need no resolution here.[4] What we know, and all that is relevant for the limited question of removal, is that Jane Doe once wanted an abortion and now does not. As best we can tell from the scant record before the court, the Garzas proceeded in due course to represent a client who they believed sought a judicial bypass to pursue an abortion. We will not join in the special concurrence and dissent's castigation of the Garzas as "solicit[ing] unaccompanied, non-English-speaking children behind the back of [a] legal custodian," as it is unwarranted and does not answer the stark question before us.

## III.

The issue giving rise to removal here is not a clash of power—the power of the *state court* order to require production of Jane Doe and the power of ORR to refuse to do so.[5] Rather, the narrow issue is whether ORR possesses a valid

---

[4] The original engagement between Jane Doe and the Garzas is somewhat unclear. We are confident that the history of the relationship can be clarified in the district court proceeding if it becomes relevant.

[5] The special concurrence and dissent accuses the per curiam of disingenuously failing to frame the issue as a clash of power. We disagree. The parties dispute a single fact—whether or not Jane Doe

4

federal defense to the state court order by "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child,"[6] or, on the other hand, whether it is, in fact, blocking what no party disputes is Jane Doe's ability to exercise her constitutional right to pursue an abortion.[7] As the parties agree, the answer hinges on Jane Doe's wishes, the state court order notwithstanding. Thus, the question is ultimately whether facilitating access to the state bypass proceeding is "inconsistent with the minor's stated wishes," as the government urges. If it is not, then the federal government possesses an *independent obligation* to produce her for the bypass proceedings that springs from its statutory and constitutional duties, a matter the government does not address. For this limited reason, removal is proper in this case.[8] It does not depend on

---

wants an abortion. If the minor wants an abortion, then both state and federal law require that she have access to it. They do not point in different directions.

[6] 6 U.S.C. § 279(b)(1)(B).

[7] *See Bellotti v. Baird*, 443 U.S. 622, 643–44 (1979) ("A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." (footnote omitted)).

[8] The special concurrence and dissent asserts that we "arbitrarily cabin[] the scope of ORR's legal responsibility and implicitly encourage[] third parties with an avowed advocacy agenda to usurp decisions that federal law commits to ORR as legal custodian." We do not. Section 1442(a)(1) provides that a "civil action . . . that is against or directed to . . . [the United States or any agency thereof] . . . may be removed." 28 U.S.C. § 1442(a)(1). Section 1442(d)(1) defines the term 'civil action' to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such a proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no basis for removal, *only that proceeding may be removed to the district court.*" 28 U.S.C. § 1442(d)(1) (emphasis added).

Here, the government asserts three bases for removal: (1) the state court order "requires the United States to bring a minor who is currently in its custody and care to state court;" (2) the state court order "requires the United States to facilitate access to the minor by the state court appointed guardian and attorney ad litem, inconsistent with the minor's stated wishes;" and (3) the state court "requires the United States to provide a third party with access to federal records, without going through the proper avenue to obtain those documents." Our "minimalist" order is therefore cabined by the government's own reasons for removal. As discussed, we see only a plausible theory of removal for the portion of the state court order that requires the government to "facilitate access" to the minor by the guardian and attorney ad litem "against the minor's wishes."

To the extent that the special concurrence and dissent reads "proceeding" to mean the entire bypass proceeding, the plain language of Section 1442, principles of federalism, and the well-worn notion that federal courts should avoid family law issues—to name a few—counsel against such an

the independent validity of the state order directed to the federal government, which is a matter we need not assess.[9]

It is undisputed that Jane Doe at one point requested assistance to access the state courts, and state-appointed counsel proceeded on this basis.[10] But ORR asserts, and substantiates with Jane Doe's own words in the form of two handwritten notes, that Jane Doe has since changed her mind and no longer wishes to proceed with an abortion. The government states the issue in terms of whether Jane Doe presently wants to pursue an abortion, and urges this question ought to be resolved by a neutral party. There is no contention that ORR's statutory obligation to protect the interest of the minor includes the right on its part to independently decide whether an abortion is in her interest.[11]

Thus, the simple path to resolution of this dispute is, as the government suggests, to vacate the district court's order and to remand to the district court so that it may conduct a hearing to resolve the question of whether Jane Doe presently wishes to pursue an abortion. On remand, the district court will appoint a guardian ad litem. The able district court may take guidance from

---

approach that is unfounded in removal jurisprudence. *Cf. Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 412–15 (D.C. Cir. 1995) (removing only the enforceability of the subpoena to federal court, not the whole case).

[9] The government concedes that it is required to have a colorable defense for removal under 28 U.S.C. § 1442(a)(1). To the extent that the state court order compels ORR to violate its custodial duties, ORR has one. *See State v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017) ("'colorable' here means plausible, not 'clearly sustainable'" (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999))).

[10] The special concurrence and dissent contends that the government does not concede that "Doe at one point requested assistance to 'access the state courts,'" noting that "the record only shows that she signed a Dept. of Homeland Security Form G-28 authorizing counsel to represent her in immigration proceedings." It is unclear how the government does not effectively concede this point. The linchpin of this litigation is that Jane Doe "changed [her] decision to have an abortion." This turnabout presupposes that Jane Doe held a prior position of wishing to pursue an abortion, which would require her to seek access to the state courts. The government has not challenged that a nonprofit referred Jane Doe to the Garzas. The idea that the Garzas "poached" Jane Doe is of the special concurrence and dissent's own making.

[11] *See* 6 U.S.C. § 279(b)(1)(B).

the processes adhered to in the Hague Convention cases, in which the district court meets with the child *ex parte*, and with a court reporter present.[12]

The government is directed to present Jane Doe to proceedings before the district court. If the government elects not to do so, the Garzas, as Jane Doe's current guardian and attorney ad litem, may do so. If the court finds that Jane Doe does not wish to abort her pregnancy, the matter is concluded, and the district court should dismiss the case. If the court finds that Jane Doe wishes to proceed, the district court will instruct the government to cooperate either with the Garzas, or another guardian and attorney ad litem the district court may choose to appoint.

IV.

Finally, and notwithstanding the strong principle of constitutional avoidance that directs us to eschew far-reaching constitutional questions, the special concurrence and dissent baits ORR to confront the antecedent questions of whether there is a constitutional right for unaccompanied alien minors to an abortion and whether there is a constitutional right to a judicial bypass at all when the government is a custodian. To be certain, the use of an order granting an emergency motion to stay and consolidating the merits of a removal question as some envoy to recommend "military" strategy in ORR's supposed "battle" in the "war" on abortion is beyond the pale.

We will not say much, as the constitutional questions, posed sua sponte by the special concurrence and dissent, were neither briefed nor argued. It bears to mention, however, that our colleague fails to address the opinion that garnered the majority of the D.C. Circuit sitting en banc. Particularly noteworthy are its observations that the Supreme Court has "long recognized

---

[12] *Cf., e.g.*, *Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109, 1126 (D. Colo. 2008) ("[A]ll three of the minor children expressed their opinions regarding a return to Mexico during an *ex parte* meeting with me in chambers.").

that immigrants who lack lawful status are protected persons under the Due Process clause" and the lack of authority that says the "government has a right to flatly prohibit an abortion—to override the woman's choice—by virtue of keeping her in custody."[13]

There are no battles or wars here, only straight-forward fact issues. The resolution of this case, as framed by counsel, does not present constitutional questions.

V.

We VACATE the remand order of the district court and REMAND the case to the district court for resolution of the disputed factual issues. The mandate will issue immediately.

---

[13] *Garza v. Hargan*, No. 17-5236, slip. op. at *4, 9 (D.C. Cir. Oct. 20, 2017) (Millet, J., dissenting); *see also Garza v. Hargan*, 874 F.3d 735, 736 (D.C. Cir. 2017) (en banc) (adopting the dissenting statement of Judge Millett).

No. 18-40146

EDITH H. JONES, Circuit Judge, specially concurring in part and dissenting in part:

Before this court is a motion to stay the district court's remand of a case removed from state court pursuant to 28 U.S.C. § 1442 by the Office of Refugee Resettlement ("ORR"). ORR is the branch of the federal Department of Health and Human Services that has custodial responsibility for Doe, an unaccompanied, undocumented pregnant 14-year-old alien apprehended at the Texas border. We also have a notice of appeal from the remand order.

Procedurally, I agree to grant the stay, sua sponte consolidate the stay motion with the merits, reverse the remand order, and instruct the federal district court to ascertain Doe's wishes about abortion and if necessary appoint a neutral guardian ad litem. I dissent from the opinion's statement that if the district court finds that Doe wishes to pursue the abortion, the district court may allow the Garzas to continue their representation. (Of course, the opinion also permits the district court *not* to approve the Garzas' representation, a condition I would make mandatory.)

I concur separately because the per curiam opinion's minimalist reasoning rests on critical assumptions that are not in dispute between the parties here but must be exposed in order to prevent the continued sidestepping of ORR's custodial role by advocacy groups seeking to extend abortion rights. Doe is a pawn in a fight for control over the federal government's relationship with unaccompanied alien children who are in custody because they haven't been legally admitted to the United States. In my view, the district court, aided by a neutral guardian ad litem and if

9

necessary, a conflict-free attorney ad litem, should proceed to resolve whether an abortion is in the best interests of the "barely-14 year old" minor.

It is undisputed that Doe's pregnancy was apparently discovered during a medical examination when she arrived at an ORR facility in mid-January.[1] She was found to be 6 weeks pregnant at that time.  According to an affidavit of an ORR official, she stated that the pregnancy did not result from rape, incest, or sexual assault.  Several weeks after entering ORR custody in an approved shelter, Doe came into contact with attorneys who had learned about her pregnancy.  She signed a paper authorizing their legal representation, but the record shows that the federal form in question is directed solely to legal representation in immigration proceedings.[2]  Nonetheless, the attorneys hastened to state court in Brownsville, Texas, Rochelle Garza was appointed the minor's guardian ad litem and Myles Garza attorney ad litem "to provide legal services necessary to assist the Court in protecting the best interests of Jane Doe."  The state court then ordered Doe produced "by any custodian of the child" for a judicial bypass hearing.  The state court also ordered production of all relevant records, which were created and maintained by ORR as custodian. And the state court ordered "any custodian" to grant these lawyers immediate access to Doe.  ORR declined to comply.  ORR stated that two days after Doe had signed some kind of paper concerning these attorneys, she handwrote twice that she had decided not to seek an abortion and did not want

---

[1] The per curiam opinion recites the "facts" stated in the Garzas' response to motion to stay in this court.  These "facts" are nowhere in the record before us, and are described only "to the best information and belief" of the lawyers—which is odd, since they were personally involved in one conversation with Doe and in presenting their ex parte case to the state court.  The "facts" are stated neither in their capacity as "officers of the court" nor as a declaration under penalty of perjury.  ORR, in contrast, supported its motion for stay with an official's properly executed affidavit.

[2] The per curiam opinion states that it is "undisputed" that Doe at one point requested assistance to "access the state courts," but the government does not concede this point, and as noted, the record only shows that she signed a Dept. of Homeland Security Form G-28 authorizing counsel to represent her in immigration proceedings.

these attorneys' help, and she had confirmed her decision with a clinician. ORR sought removal of the bypass proceeding to federal district court pursuant to 28 U.S.C. § 1442 and sought appointment of a neutral guardian ad litem for Doe. The federal district court, however, misread the statutory provisions and remanded.

## I. Impropriety of remand

No one disputes that we have jurisdiction over the government's appeal from the erroneously footed district court decision. 28 U.S.C § 1447(d).

Both the motion to stay and the merits turn on the interpretation of 28 U.S.C. § 1442, whose plain language dispels any doubts about the propriety of removal. Section 1442(a)(1) authorizes removal of any civil action commenced in state court and "directed to" any federal officer or agent or federal agency, while Section 1442(d)(1) broadly defines a "civil action" to encompass any ancillary proceeding, including a subpoena for testimony or documents. Here, the state court ordered that Doe be produced in court (for testimony) and that her lawyers be given immediate access to her, acts that could only be accomplished through "any custodian," which is ORR, as well as "any information relating to" Doe, which is in the custody of ORR. The court's order therefore had to be "directed to" the custodian, because Doe, the minor ward, could not be so ordered.

The district court characterized the impact of these orders as "tangential" to ORR, but they are not; ORR's fulfilling its responsibility as a legal custodian and its cooperation are the sine qua non of compliance. The district court also asserted that ORR's attempt to remove is "premature," because ORR will not actually have an order "directed at" it or its officials until or unless the agency incurs a contempt citation for failure to comply. This, too,

is wrong, under our case law. *See Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992). Further, a 2011 amendment to Section 1442(a) added the language "directed to" precisely to broaden officials' access to federal court when their official duties were challenged in state court. *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2, 125 Stat. 545 (2011); H.R. Rep. No. 112-17, pt. 1, at 3-6 (2011). Long before the amendment of 2011, which also authorized appeals from unfavorable Section 1442 remand orders, the Supreme Court had stated that "the right of removal is absolute for conduct performed under color of federal office, and [the Court] has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664 (1981). Removal was incontrovertibly required here, and the district court erred in holding otherwise.

Insofar as a colorable federal defense to the state court orders was required, *Manypenny*, 451 U.S. at 241-42, 101 S. Ct. at 1664, several arise from the Supremacy Clause. ORR, the HHS delegate, is Doe's legal custodian and expressly charged with making custodial decisions with regard to her. 8 U.S.C. § 1232(b)(1); 6 U.S.C. § 279. The federal government enjoys sovereign immunity from involuntary compliance with state court orders, yet the essential purpose of the lawyers' ex parte state court proceeding was to evade and deny ORR's status and immunity. Finally, the government's confidentiality regulations superseded a state court's orders to produce the documents. These defenses are in my view not just colorable but conclusive. Even the per curiam acknowledges, albeit in a footnote, that a colorable federal defense exists to the extent the state court order requires ORR to violate its custodial duties. P.C. Op. at fn. 9. Thus, the district court had jurisdiction to determine the scope, if any, of the state court's orders insofar as they

necessarily compel ORR to act in breach of its custodial duties and, so ORR urges, against Doe's wishes.[3]

The per curiam's settling on a "limited remand" to the district court, with instruction to conduct an ex parte hearing, holds without expressly stating that federal court removal jurisdiction was proper. If the district court had no jurisdiction, we would have no basis to ask it to conduct any kind of hearing.

Following removal, however, the district court's jurisdiction should not be limited to determining the minor's asserted wishes about an abortion. I agree the court should at least make this determination. Pursuant to Section 1442, however, removal jurisdiction exists so that the district court may conduct "a trial upon the merits of the state-law question free from local interests or prejudice." *Manypenny*, 451 U.S. at 241-42, 101 S. Ct. at 1664. The state court orders were "directed to ORR" to produce Doe for an ex parte hearing, require her to consult with the Garzas, and produce confidential documents. Ascertaining the minor's preferences are only a part of the state court's directions. Although I compromise for the sake of moving this case along, the proper application Section 1442, pursuant to *Manypenny,* would instruct the federal district court, in this case and under these circumstances, to hold any bypass hearing, should it become advisable. *See id.* (ordering criminal case under state law to be heard in federal court following 1442 removal).

Unfortunately, the per curiam opinion's reasoning arbitrarily cabins the scope of ORR's legal responsibility and implicitly encourages third parties with

---

[3] I disagree with the per curiam's disingenuous disavowal that the issue here does not pose a *clash of power*. Though the government places repeated stress on Doe's expressed desire not to have an abortion, its briefing is clearly based on the conflict between federal law, prescribing ORR's custodial duties, and the state court orders that denied its role.

an avowed advocacy agenda[4] to usurp decisions that federal law commits to ORR as legal custodian.  6 U.S.C. § 279(b)(1)(A)&(B); 8 U.S.C. § 1232.  It is therefore important to explain why this attempt at establishing an ex parte guardianship beyond the supervision of ORR is illegal.

ORR has legal responsibility for "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child."  6 U.S.C. § 279(b)(1)(B); 8 U.S.C. § 1232(b)(1)(delegation from HHS).  Under ORR's policies and procedures, the agency Director must approve requests for serious medical procedures, including abortions, for any unaccompanied alien child. Where federal law is explicit, it is supreme in its sphere.  The authority of the federal government in matters pertaining to illegal aliens is nearly exclusive.  *Arizona v. United States*, 567 U.S. 387, 394, 132 S. Ct. 2492, 2498 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration . . . .").  State law may not interfere with explicit federal regulations concerning illegal aliens. *Id.*; *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 528-29 (5th Cir. 2013) (en banc).  There is nothing left undecided by statute or regulation about the federal government's duty toward unaccompanied alien children.  First, by statutory definition, these are children who have "no parent or legal guardian in the United States . . . available to provide care and physical custody."  6 U.S.C. § 279(g)(2)(C)(ii).  The reference to "legal guardian" clearly means a guardian whose existence predated the child's being apprehended at the international border; otherwise, such a guardian could be called upon to

---

[4] Rochelle Garza, Jane Doe's would-be guardian ad litem, is the named plaintiff for a class of pregnant unaccompanied minors seeking abortion access from the Secretary of Health and Human Services.  *See Garza v. Hargan*, 874 F.3d 735 (D.C. Cir. 2017) (en banc).  Jane Doe's abortion was expedited, without notice to the federal government, at least in part to thwart Supreme Court review of the D.C. Circuit decision.

assume the child's care and custody.[5]  Moreover, ORR has the duty to oversee the custodial arrangements for the unaccompanied minors and to protect them from abuse or manipulation.  Any proposed custodian or entity must be found capable of "providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A).    Before placing a child with an individual, for instance, ORR must conduct a home study for any "child who has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened . . . . " 8 U.S.C § 1232(c)(3)(B).  Surely there can be no dispute, notwithstanding Doe's statements, that impregnating a 13-year old victimizes her physically and sexually and threatens the child's health or welfare.  Given Doe's very tender age, ORR, as legal custodian, needs to assure that her mental and physical health will be protected.  After all, the agency will remain responsible for her irrespective of the pregnancy's outcome.

The ex parte appointment of the guardian ad litem and legal guardian in the state court deliberately conflicted with this statutory scheme.  ORR had no prior notice of the lawyers' intent to go to court, no chance to coordinate with, much less approve the lawyers' representation of Doe, and no input into the state court's determination of their suitability.  ORR had no notice that Doe had consulted these lawyers.  ORR, as its briefing plainly contends, was prevented from performing its statutory duties.

In addition, the Garzas never sought to pursue Doe's interests in conjunction with ORR, but have acted inherently in opposition to the agency's comprehensive federal duty toward her.  The lawyers contend that federal law required ORR to accept their legal representation, but this claim is inaccurate.

---

[5] The Garzas obviously have not become guardians in this sense.  They have no desire to assume custody for all purposes.  Their expressed intention is solely to get Doe an abortion, otherwise they would have collaborated with ORR to ascertain Doe's current wishes and best interests.

8 U.S.C. § 1232(c)(5) authorizes "access to counsel" for unaccompanied alien children. What this provision states is that ORR must ensure "to the greatest extent practicable and consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362) . . . . counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. §§ 1232(c)(5). The associated regulations focus on immigration representation for unaccompanied alien children. And the record here shows only that Doe signed an immigration-representation form with the Garzas. Even if the purposes for which counsel may be appointed are unlimited, this provision does not authorize outside counsel to claim to represent unaccompanied, non-English-speaking children behind the back of their legal custodian, ORR.

ORR does not dispute that as custodian, it may have to get independent counsel appointed for unaccompanied alien children, and its regulations offer lists of approved counsel. ORR, indeed, suggested a highly qualified attorney to become Doe's neutral guardian ad litem in this federal court matter. ORR cogently observes that if the Garzas truly had the best interests of Doe in mind, they would not oppose the agency's request that the federal district court appoint a truly neutral guardian ad litem.

There is simply no precedent in this court for requiring a federally mandated legal guardian of unaccompanied alien children to subserve state-appointed lawyers and for this court to ignore the constitutional and statutory relationships created by the federal government's control over immigration. The Supremacy Clause is turned upside down to hold or imply otherwise.

For these reasons, Section 1442 removal was appropriate.

No. 18-40146

II. Who is a "neutral" guardian ad litem

The per curiam holds out the possibility that if Doe elects to attempt to obtain approval for an abortion, then the Garzas may represent her. In light of the Garzas' tactics in this case and their advocacy in favor of minors' abortion rights in a class action case, I dissent from this portion of the per curiam opinion. The state court order appointing Rochelle Garza as guardian ad litem requires a comprehensive medical and mental health review of this 14-year old for the purpose of *ascertaining whether* she ought to have an abortion. The breadth of the guardian's duties stated in Texas law is in compliance with applicable Supreme Court decisions, *see, e.g.*, *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035 (1979), and Texas law. Importantly, however, the bypass court may in the end determine, notwithstanding Doe's wishes, that an abortion is *not* in her best interests. *Id.* at 643-44, 99 S. Ct. at 3050 ("If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation"). Myles Garza's position as attorney ad litem is also questionable; that he has become a fact witness as to his client's "wishes" suggests the need for a non-conflicted attorney ad litem. The Garzas have demonstrated by word and deed that their goal is to foster abortions. Were it not so, they would not have objected to the appointment of a truly neutral guardian. The record offers no assurance that the Garzas can fulfill the neutral role that Supreme Court and Texas law envision with respect to Doe's best interests. They should be displaced. I dissent from the per curiam's contrary implication.

III. What is Left Unsaid

The premises of this upending, of course, are that Doe has a "constitutional right" to obtain an abortion secured by a "constitutional right"

17

to a judicial bypass proceeding in state court. I respectfully but emphatically disagree with the insinuation in the per curiam writing about these issues, which have been neither briefed nor argued here or in the district court. In the case before us, ORR does not challenge these premises and, as a result, obscures its position.[6] *See also Garza v. Hagan,* 874 F.3d 735, 753 (Kavanaugh, J., dissenting) (noting the government's similar failure to make these arguments in the D.C. Circuit). ORR merely urges the appointment of a neutral guardian ad litem who, it assures us, will demonstrate that Doe does not "wish" to abort her baby. That is all it need contend for purposes of this appeal. Hoping this is sufficient, I go along with the per curiam's limited order for relief.

By failing to challenge the underlying premises, however, ORR may temporarily win this battle but lose the war for its statutory responsibility.[7] The war may be lost because, with our limited order, the Garzas and similarly minded activists will continue to seek out pregnant unaccompanied alien children and pursue litigation in numerous fora and with complex and varying procedural scenarios. At some point, the government needs to confront the antecedent issue raised powerfully in Judge Henderson's recent dissent: where is there a "constitutional right" for unaccompanied, inadmissible aliens who have never formally "entered" this country to obtain abortions in the United States? *See Garza v. Hargan,* 874 F.3d 735, 743-52 (D.C. Cir. 2017) (Henderson, J., dissenting). That the D.C. Circuit in *Garza* undertook an

---

[6] It is not clear in ORR's briefing, for instance, whether the agency would acquiesce in the per curiam's statement that "the federal government [may possess] an *independent obligation* to produce [Doe] for the bypass proceedings that springs from its statutory and constitutional duties." What constitutional duties? Bypass proceedings in what court? In regard to the latter question, as I noted above, I believe the federal district court should be obliged following removal to assume responsibility for any bypass proceeding.

[7] This writer disclaims any pretense to being Joan of Arc. The phrase win the battle, lose the war means something like a Pyrrhic victory and most well-educated readers know the expression is used well beyond the military connotation.

extraordinarily expedited en banc proceeding to reverse a panel decision and make a very broad pronouncement on these issues is not binding precedent.

The other antecedent question not directly confronted by our opinion assumes arguendo that such a constitutional right exists. But why does a "judicial bypass" have any meaning whatsoever for a minor who already has a legal custodian acting in place of an absent, foreign parent? ORR's custodial status parallels in some ways but is hardly commensurate with that of parents. Yet the Supreme Court's decisions expounding a judicial bypass for minors seeking abortions are based on the concern that "there are parents who would obstruct, and perhaps altogether prevent, the minor's right to go to court . . ." *Bellotti v. Baird*, 443 U.S. 622, 647, 99 S. Ct. 3035, 3050 (1979). (internal quotation omitted). All of those cases are permeated by the unique influence inherent in the parent-child relationship. Whatever the Garzas may think of ORR, it is bound to act in the best interests of the unaccompanied alien child *in conformance with* governing federal law. There is no basis in the Supreme Court's abortion cases for inferring that a pregnant unaccompanied alien child has a "right" to succumb to lawyers' solicitations and appear ex parte in state court without consultation or even knowledge of her extant, non-parental legal custodian. There is no evidence in this record that ORR has exhibited any intent or taken any action to thwart federal law. That ORR could and will cooperate to ascertain the best interests of pregnant unaccompanied alien minors, even through a judicial bypass proceeding, has been demonstrated. *See Garza v. Hargan*, No. 17-cv-02122-TSC (D.D.C.), Plaintiffs' Second Amended Complaint for Injunctive Relief, at 4 ("After Plaintiffs' counsel contacted, [ORR's] counsel, J.D. was allowed to pursue a judicial bypass in lieu of securing parental consent . . ."). Based on ORR's conscientious efforts as

19

No. 18-40146

Doe's legal custodian, the assumptions underlying any requirement of state court judicial bypass proceedings are unsupported.

With these comments, I concur in the relief ordered, such as it is, but dissent from its limited scope and from the possibility that the Garzas may be authorized to represent Doe.