In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 15-3847, 16-1197, & 16-1310

P.H. GLATFELTER CO.,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

WINDWARD PROSPECTS LTD.,

*Defendant-Appellee/Cross-Appellant*.

———————————

Appeals from the United States District Court for the
Eastern District of Wisconsin, Green Bay Division.
No. 15-MC-46 — **William C. Griesbach**, *Chief Judge*.

———————————

ARGUED JANUARY 19, 2017 — DECIDED JANUARY 31, 2017

———————————

Before FLAUM, MANION, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. These three appeals arise out of a discovery dispute between P.H. Glatfelter Co., a paper manufacturer, and Windward Prospects Ltd., an English company on which Glatfelter served a non-party subpoena. Two of the appeals are taken by Glatfelter from the district court's orders denying both Glatfelter's motion to compel responses to its subpoena and Glatfelter's motion for reconsideration. The third appeal, which we treat as a cross-appeal, was taken by

Windward to seek an award of fees and costs under Federal Rule of Civil Procedure 37. For the reasons that follow, we dismiss all three appeals for lack of jurisdiction.

## I. Background

The present appeals are ancillary to an ongoing multi-party effort to clean up polychlorinated biphenyls (PCBs) in the bed of the Lower Fox River in northeastern Wisconsin. *See generally United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 665–67 (7th Cir. 2014); *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 686–89 (7th Cir. 2014); *United States v. NCR Corp.*, 688 F.3d 833, 835–36 (7th Cir. 2012). From the mid-1950s through the 1970s, several paper mills and a coating plant discharged wastewater containing PCBs into the Lower Fox River. By 1979, when the EPA banned PCB use, approximately 250,000 pounds of PCBs had been released into the river bed. Beginning in the 1990s, the EPA and the Wisconsin Department of Natural Resources began investigating the contamination to develop a cleanup plan under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). The EPA's final plan, adopted in 2002, proposed a cleanup proceeding in stages through a combination of dredging and capping at various sites.

The remediation cost for the Lower Fox River is estimated to be approximately $700 million. *See, e.g.*, *P.H. Glatfelter Co.*, 768 F.3d at 667. Under CERCLA, the obligation to pay for the cleanup falls on the parties responsible for creating the hazard, and potentially responsible parties (PRPs) may be liable for the full costs of remediation. Paper manufacturers NCR Corporation and Appvion, Inc. were named by the EPA as PRPs and have funded the ongoing cleanup. Other companies

with a potential role in the discharge of PCBs, including Glatfelter, also were named as PRPs and agreed to perform remedial work.

In late 2007, the EPA issued a unilateral administrative order directing the PRPs to begin remedial work in the last four operable units of the Lower Fox River. NCR and Appvion undertook many of those remedial efforts. They then sued other PRPs, including Glatfelter, in the Eastern District of Wisconsin, seeking to recover the cleanup costs and to require other PRPs to pay for future remedial work.[1] The district court initially ruled on summary judgment that NCR and Appvion were not entitled to any equitable contribution from the other paper mills involved. In 2014, we reversed and remanded the cost recovery action back to the district court. *See NCR Corp.*, 768 F.3d at 687, 689–90, 713. That action remains pending, with Appvion seeking recovery against Glatfelter and other PRPs for the Lower Fox River cleanup costs Appvion has incurred, in addition to subrogation and declaratory relief.

---

[1] As we observed in *NCR Corp.*, 768 F.3d at 692:

> Appvion finds itself in a materially different position from NCR when it comes to the choice between cost recovery and contribution. In fact, it appears to be in an unusual, possibly unique, position among parties incurring costs under CERCLA: it was initially identified as a PRP by the government and paid response costs in that capacity, but later it was held to fall outside of CERCLA's statutory grounds for liability. It is now on the hook for response costs only as NCR's indemnitor pursuant to an agreement signed when the companies split up. It is seeking the costs of response it paid directly while it was regarded as a PRP.

Windward is an English entity allegedly conducting Appvion's defense of CERCLA claims and managing Appvion's responsibility for the Lower Fox River cleanup operations. Windward ratified the commencement of the cost recovery action by Appvion and has stated that Windward will be bound by the result. To defend against Appvion in the cost recovery action, Glatfelter sought discovery relating to Appvion's costs from both Appvion and Windward. Glatfelter contends that identifying those costs (and any potential offsets from insurance, settlements, or indemnification payments) depends on understanding how funds changed hands between Appvion and its insurers or indemnitors, including Windward.

Glatfelter first attempted to obtain discovery from Windward through Appvion, which refused to accept service on Windward's behalf. Glatfelter next sent a copy of its discovery request by certified mail to Windward's counsel at his home office in New Hampshire. He returned the envelope unopened. Glatfelter then filed a motion to compel responses to its discovery requests in the Eastern District of Wisconsin. The district court denied the motion, ruling that Windward's ratification of Appvion's action did not, on its own, give Glatfelter an independent right to seek discovery from the former under Federal Rules of Civil Procedure 33 or 34, but that there are other ways to obtain discovery from non-parties.

Glatfelter next issued a subpoena to Windward at its attorney's New Hampshire address. Windward's counsel informed Glatfelter that Windward would not be making any production because it was not subject to the jurisdiction of the United States federal courts. Windward also objected to the

subpoena to the extent that it sought documents or information available from another more convenient, less burdensome, or less expensive source (*i.e.*, Appvion).

Glatfelter then instituted this ancillary proceeding in the District of Massachusetts,[2] seeking to compel Windward to respond to the subpoena. Glatfelter also simultaneously moved under Rule 45(f) to transfer the case to the Eastern District of Wisconsin, where the cost recovery action was pending before Judge Griesbach, who had presided over the case since it was first filed. Following a hearing, the magistrate judge in Massachusetts ordered a transfer to the Eastern District of Wisconsin, and the ancillary action was docketed before Judge Griesbach. After receiving additional arguments and evidence, he denied the motion to compel, concluding that the court lacked personal jurisdiction over Windward and that Glatfelter had not established which documents it sought that were not already subject to production by Appvion. Glatfelter filed a motion for reconsideration, which the district court also denied.

Glatfelter appealed the district court's denial of its motions, and Windward filed a third appeal regarding fees, which we treated as a cross-appeal. In our order dated July 25, 2016, we directed that Windward's cross-appeal be taken with the other appeals, and instructed the parties to address all jurisdictional issues in their briefs.

_____

[2] Rule 45(d)(2)(B) provides that "the serving party may move the court for the district where compliance is required for an order compelling production" and "the order [to compel production] must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(i)-(ii).

On January 17, 2017, two days before oral argument was scheduled in this case, Glatfelter notified this Court of a proposed consent decree among NCR, Appvion, the United States, and the state of Wisconsin that had been submitted to the district court. If approved and entered, the proposed decree would potentially resolve Appvion's claims against Glatfelter in the cost recovery action that gave rise to these ancillary proceedings.

## II. Discussion

"The initial inquiry in any appeal is whether the court to which the appeal has been taken has jurisdiction to entertain the appeal." *Sik Gaek, Inc. v. Harris*, 789 F.3d 797, 799 (7th Cir. 2015) (citation omitted). The federal courts of appeal have jurisdiction over all final decisions of the federal district courts. *See* 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits, leaving nothing for the [district] court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (citation omitted). The general rule is that pretrial discovery orders, such as those at issue here, are not final in terms of winding up the underlying lawsuit. *See Sik Gaek, Inc.*, 789 F.3d at 799. An exception exists, however, under the collateral order doctrine, where an order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (citing *Abney v. United States*, 431 U.S. 651, 658 (1977); *United States v. MacDonald*, 435 U.S. 850, 855 (1978)).

Glatfelter emphasizes that this ancillary discovery issue has been conclusively decided by the district court's two orders and is collateral to the underlying cost recovery suit, and

that this appeal is, for all practical purposes, Glatfelter's only chance to obtain discovery from Windward, a non-party to the main action. *See, e.g.*, *Carter Prods., Inc. v. Eversharp, Inc.*, 360 F.2d 868, 870 (7th Cir. 1966) (finding jurisdiction over an appeal from the Illinois district court's denial of a motion to compel deposition testimony of non-party to underlying California litigation, because, "[f]or all practical purposes[,] … this appeal [is appellants'] only opportunity for review of the district court's order denying access to the information"). Thus, Glatfelter contends, the collateral order doctrine ought to apply.

The problem for Glatfelter is that this ancillary action was transferred from the District of Massachusetts to the Eastern District of Wisconsin prior to this appeal. In our Circuit, we have recognized the appealability of pretrial discovery orders only where they were issued by a district court in an ancillary proceeding *and* said district court was not within the jurisdiction of the circuit court having appellate jurisdiction to review the final adjudication of the main action. *See, e.g.*, *Sik Gaek, Inc.*, 789 F.3d at 799 ("Here, the district court order denying sanctions was issued in a jurisdiction not that of the main proceeding. Consequently, appellants cannot obtain effective review of the order as part of an appeal of a final adjudication of the main action …."); *see also id.* (citing cases); *Hernly v. United States*, 832 F.2d 980, 981 n.1 (7th Cir. 1987) ("This court has previously decided that it has jurisdiction. The order appealed from was deemed final because it was entered in a different district court from where the main action is pending.") (citation and internal quotation marks omitted). Because the ancillary action (this discovery dispute) is in the same district court where the main action (the cost recovery action) is currently pending, Glatfelter could obtain review of the denial of

its motions to compel and for reconsideration on appeal from
the final judgment in the main action.

We have not yet ruled directly on whether one may appeal
an order in an ancillary action entered in a district court lo-
cated in the same circuit as the district court handling the
main action. However, other circuits that have considered the
issue have held such orders interlocutory and not immedi-
ately appealable. *See, e.g.*, *Barrick Grp., Inc. v. Mosse*, 849 F.2d
70, 73 (2d Cir. 1988) ("Under these circumstances, a circuit
court can consider any appeal on discovery issues at the same
time as the appeal from the judgment in the underlying ac-
tion. This approach avoids piecemeal proceedings, strength-
ens the rule of finality and provides ultimately for the effec-
tive review of all issues."); *Hooker v. Cont'l Life Ins. Co.*, 965
F.2d 903, 905 (10th Cir. 1992) (focusing on whether the appeal-
ing party "has any means, other than an immediate appeal, to
obtain appellate review," and concluding that "[b]ecause the
same circuit court will have jurisdiction to review both the
discovery order and the final adjudication …, appellate re-
view of the order denying discovery will not be foreclosed by
delaying review until a final adjudication of the entire ac-
tion"); *In re Subpoena Served on Cal. Pub. Utils. Comm'n*, 813
F.2d 1473, 1475–80 (9th Cir. 1987) (dismissing, sua sponte, ap-
peal of an order quashing a non-party subpoena for want of
appellate jurisdiction because court could review the order
with appeal from final adjudication of main action).

Glatfelter nonetheless points to decisions by the Eleventh
and Federal Circuits that it claims support its position: that an
order denying a motion to compel may still be appealable,
even if entered by a district court located within the same cir-
cuit as the court presiding over the main action. *See Ariel v.*

*Jones*, 693 F.2d 1058, 1059 (11th Cir. 1982) (per curiam) (concluding that appellate jurisdiction existed over Southern District of Florida order quashing subpoena issued in connection with main action pending in Middle District of Florida); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1020–22 (Fed. Cir. 1986) (holding that appellate jurisdiction existed with respect to Northern District of West Virginia order granting a motion to quash a non-party subpoena in connection with a main action pending in the Northern District of California). Glatfelter thus contends that there is a circuit split here that ought to be resolved in its favor.

To cut to the chase, however, even setting aside the apparent limitations of these two cases,[3] there certainly is no circuit

---

[3] For example, the circuit decisions on which *Ariel* relied all involved situations where the two district courts at issue were in different circuits. *See Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595 (3d Cir. 1980) (finding appellate jurisdiction over denial of motion to compel discovery from non-party in Third Circuit where main action was pending in Fifth Circuit); *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551 (2d Cir. 1967) (same for denial of motion to compel discovery in Second Circuit where main action was pending in Seventh Circuit); *Gladrow v. Weisz*, 354 F.2d 464 (5th Cir. 1965) (same for appeal of order requiring discovery of non-party in Fifth Circuit where main action was pending before board of patent interferences of United States Patent Office); *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421 (1st Cir. 1961) (same for order granting motion to quash subpoena in First Circuit where main action was pending in D.C. Circuit). Additionally, the treatise to which *Ariel* cited in support of its analysis has since been updated to include language reflecting that "[t]his exception has itself now been limited to situations in which the two districts are in different circuits." 8 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2006 (3d ed. 2016).

As for the Federal Circuit case, in *Hester*, a patent owner sought discovery in the Northern District of West Virginia from a non-party who allegedly had infringed the patent at issue in a litigation pending before

split or authority in favor of Glatfelter's position on the issue
of whether a discovery order in an ancillary proceeding is im-
mediately appealable when entered by the *very same* district
court that is presiding over the main action. *Cf. In re Subpoena
Served on Cal. Pub. Utils. Comm'n*, 813 F.2d at 1474–75
(contrasting "a nonappealable interlocutory order issued by
the district court having jurisdiction over the main action"
with "an interlocutory order issued by a district court of a dif-
ferent circuit from the district court where the case was

---

the Northern District of California. 785 F.2d at 1020–21. The Northern Dis-
trict of West Virginia quashed the subpoena, and the patent owner ap-
pealed to the Federal Circuit, which concluded that, because the California
district court lacked jurisdiction over the non-party infringer, the patent
owner could not challenge the West Virginia district court's decision on
appeal from the California district court's final judgment, and the collat-
eral order doctrine applied. The Federal Circuit then considered whether
its result should have been different because it was the same appellate
court that would have jurisdiction over an appeal on the merits from the
California district court. *See id.* at 1021. The court of appeals observed that,
prior to the creation of the Federal Circuit, the order by the West Virginia
district court would have been appealable to the Fourth Circuit, and be-
cause such an order would have been appealable as a final disposition of
the only proceeding in the ancillary court:

> [W]e are satisfied that it does not matter that the Federal
> Circuit is the same appellate court that would possess ju-
> risdiction over an appeal from the California district
> court's final action on the merits. The California court has
> no jurisdiction over Hester, a nonparty to the main in-
> fringement action, and Heat & Control has no other
> means of effectively obtaining review than by appealing
> the West Virginia court's order, necessarily to this court.
> Thus, the West Virginia court's order is appealable, and
> this court possesses jurisdiction to hear it.

*Id.* at 1021–22.

filed"). Indeed, the Federal Circuit in *Hester* specifically observed that "[i]f the district court granting Hester's motion to quash were the same court in which the main action is being litigated, [appellant] could seek review, as an error of the court, when and if it appeals from the final judgment." 785 F.2d at 1021.

Glatfelter protests that we should nonetheless find jurisdiction over its appeals because the only reason this ancillary action, which was commenced in a district court in another circuit, is now in the same court as the main action, is that Glatfelter moved for transfer under Rule 45(f). Rule 45(f), which Glatfelter emphasizes was only recently promulgated in 2013,[4] provides:

> When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances…. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

---

[4] Windward pushes back on this characterization of Rule 45(f), noting that transfer is hardly a novel concept and was available long before 2013. *See, e.g.*, 28 U.S.C. § 1404 (change-of-venue provision). Windward explains the Rule 45(f) transfer provision as one that was included because the new Rule 45 requires a motion to compel to be brought in the court of compliance, *see* Fed. R. Civ. P. 45(d)(2)(B), not in the issuing court (presiding over the main action). Thus, Glatfelter would previously have had the option of bringing its motion to compel in the Eastern District of Wisconsin, where no immediate appeal would be available; according to Windward, the "new" Rule 45(f) does not change that principle.

Fed. R. Civ. P. 45(f).[5] Glatfelter emphasizes that the purpose of this rule is to efficiently consolidate motions before a single judge presiding over complex litigation. A holding that we lack appellate jurisdiction over its appeals would, according to Glatfelter, put parties in the position of either being forced to litigate a motion to compel before a district judge who has had no contact with the underlying case, or forfeiting appellate review if the motion were to be denied. Glatfelter relatedly claims that the Rules Advisory Committee could not have intended that litigants lose access to immediate appeal upon transfer into the circuit of the main action under Rule 45(f).

Glatfelter has it backwards. By allowing for transfers, Rule 45(f) allows for consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in multiple fora as well as piecemeal appeals. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 690 (1974) (noting the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals"); *Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration."). Glatfelter is correct that this discovery dispute is ancillary and does not *require* consideration with the underlying main action. However, as the Supreme Court

---

[5] Windward opposed Glatfelter's transfer motion, contending that even if jurisdiction existed over Windward, this matter lacks the "exceptional circumstances" required by Rule 45(f) as a predicate to transfer.

explained in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), the collateral order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Id.* at 106 (citation and internal quotation marks omitted).

Glatfelter complains that "a final disposition of a discovery dispute would, at most, be unreviewable and, at best, would have to await a plenary appeal from a merits judgment." Yet the availability of plenary appeal from a final judgment is precisely why discovery orders like these are interlocutory and not immediately appealable. Our Circuit has consistently underscored that "what is critical is whether the party unsuccessfully seeking the subpoena has any other means of obtaining review." *Carter Prods.*, 360 F.2d at 872. It is only then that we should "extricate appellants from the cul-de-sac in which the district court's order leaves them." *Id.* Here, Glatfelter has a clear road forward. It may not be Glatfelter's preferred route, but, "[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment has never sufficed." *Mohawk Indus.*, 558 U.S. at 107 (citation, alteration, and internal quotation marks omitted). As the denials of Glatfelter's motions would be reviewable on appeal from a final judgment, we dismiss these appeals for lack of jurisdiction.[6]

Windward submitted in its briefs and at oral argument that it would voluntarily dismiss its cross-appeal if we found that we lack jurisdiction over Glatfelter's appeals. Windward's (likely premature) cross-appeal is thus also dismissed.

---

[6] Because we lack jurisdiction in the first place, the potential effect of the proposed consent decree on this action is moot.

### III. Conclusion

For the foregoing reasons, we dismiss this case in its entirety for lack of jurisdiction.