In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-2523

JENNIFER HAMMER, Director of the Illinois Department of Insurance and Liquidator of Land of Lincoln Mutual Health Insurance Company,

*Plaintiff-Appellee*,

*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

*Defendant-Appellant*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 494 — **Virginia M. Kendall**, *Judge*.

---

SUBMITTED SEPTEMBER 20, 2018* — DECIDED SEPTEMBER 25, 2018

---

* We have agreed unanimously to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Before ROVNER, HAMILTON, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. The Department of Health and Hu-
man Services owed millions of dollars to the now-defunct
Land of Lincoln Mutual Health Insurance Company. Like-
wise, Land of Lincoln owed millions to HHS. As part of its
regulatory oversight, HHS has elected to set off its own debt
payments by first paying down Land of Lincoln's debt. The
Director of the Illinois Department of Insurance, who is Land
of Lincoln's appointed liquidator, contends that this setoff vi-
olates an order issued by the Illinois court overseeing the liq-
uidation proceedings that prevents any creditors from setting
off money owed to Land of Lincoln without prior leave of the
court. The Director asked the state court for a declaration that
HHS violated the order, but HHS removed the motion to fed-
eral district court arguing that the federal government was
not subject to the state court's jurisdiction. The district court
remanded the case back to state court relying on a narrow
reading of 28 U.S.C. § 1442, as well as principles of abstention.
We reverse on both grounds and remand to the district court
for further proceedings consistent with this opinion.

**I**

This case centers on debts in the Affordable Care Act's
three premium-stabilization programs—the Risk Adjustment,
Risk Corridor, and Reinsurance programs—all of which were
designed to redistribute money among insurance companies
and thereby mitigate each company's exposure to risks in the
market. *See* 42 U.S.C. §§ 18061–18063. For the purposes of this
appeal, the parties broadly agree that HHS intended to imple-
ment these programs in a budget-neutral way paying out only
the funds that each program had taken in from other insur-
ance companies.

Land of Lincoln participated in these premium-stabilization programs and incurred a debt of roughly $32 million in the Risk Adjustment program. This debt, though large, should not have been a problem for the company, as HHS owed Land of Lincoln over $70 million, the bulk of which it owed under the Risk Corridor program. The government, however, was not able to pay what it owed because it was taking in far less money than it had expected, and it refused to dip into its limited discretionary funds. Like other insurance companies, Land of Lincoln sought the overdue Risk Corridor payments in a suit with the Court of Federal Claims, but it was rebuffed, *Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 81 (2016), and the Federal Circuit affirmed the dismissal of the claim in *Land of Lincoln Mut. Health Ins. Co. v. United States*, 892 F.3d 1184 (Fed. Cir. 2018), and its companion case *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311 (Fed. Cir. 2018). By late 2016, Land of Lincoln was incapable of paying its Risk Adjustment debt, and thus became insolvent and began rehabilitation proceedings that turned into a liquidation.

As part of the liquidation, the Chancery Division of the Circuit Court of Cook County—one of two Illinois courts empowered to oversee insurance rehabilitation and liquidation, *see* 215 ILCS 5/199—entered an order naming the Director of the Illinois Department of Insurance as liquidator, *see* 215 ILCS 5/191, and prohibited all of Land of Lincoln's creditors, including any "governmental entity," from "setting off or netting monies owed Land of Lincoln without the prior leave of this Court." *See* 215 ILCS 5/189. Despite this order and the Director's protestations, HHS began to offset its overdue payments against Land of Lincoln's debt in the Risk Adjustment program, as its own regulations permitted,

*see* 45 C.F.R. § 156.1215(b). HHS has since withheld $27 million in payments that it put toward Land of Lincoln's debt.

HHS's refusal to comply led the Director to move the state court for a declaratory judgment finding that HHS was in violation of the court's order. In the motion, the Director asserted that she "is not asking at this point that [HHS] be ordered to release the funds or pay them over to the estate," and instead she hoped that the declaration would lead HHS to follow the order of its own accord. In the event HHS did not choose to comply, the Director expressly asked for "leave to seek an appropriate remedy."

HHS removed the Director's motion to the United States District Court for the Northern District of Illinois under the federal officer removal statute, 28 U.S.C. § 1442, that permits "[t]he United States or any agency thereof" to remove a "civil action … that is commenced in a State court and that is against or directed to" the agency. Because the full liquidation proceeding in the Chancery Division of the Circuit Court of Cook County was not removable, HHS relied on § 1442(d)(1), which permits an agency to remove, separate from the entire case, "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." Shortly after removal, HHS filed a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss under the doctrine of "derivative jurisdiction," *see Rodas v. Seidlin*, 656 F.3d 610, 615–16 (7th Cir. 2011), arguing that the state court lacked jurisdiction over the United States. In its motion, HHS argued that because the United States had not waived its sovereign immunity, the federal court could not hear the case except as

an original suit. The Director responded by moving to remand the case back to state court.

The district court granted the Director's motion to remand. Relying on the legislative history surrounding § 1442(d)(1), the district court concluded that Congress had not aimed that provision toward this sort of motion for declaratory relief, but instead Congress was concerned, principally, with removal of actions "pertaining to pre-suit discovery and specifically those affecting Federal officers." Because the district court thought it necessary to construe the statute strictly against removal, it determined that it lacked removal jurisdiction over this motion, which neither related to discovery nor involved an officer. The district court then certified its remand order. *See* 28 U.S.C. § 1447(c); N.D. ILL. L.R. 81.2

HHS filed a timely motion for reconsideration, which the district court denied mainly because HHS had only rehashed its earlier arguments for removal, which the district court already had thoroughly addressed. At that time, the district court also bolstered its decision to remand explaining that even if it had erred in remanding on statutory grounds, it would have exercised its discretion to remand under the abstention doctrine first set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). In the district court's view, removal of this motion would be disruptive to the state's efforts to establish a uniform rehabilitation system centralized in specialized state courts. The district court further concluded that federal policy favoring state regulation of insurance—codified in the McCarran-Ferguson Act, 15 U.S.C. § 1012—also favored abstention. Again, the district court certified its remand order, and, that same day, the state court began to schedule briefing on the Director's motion for declaratory relief. HHS timely

appealed from the order denying its motion to reconsider, and we expedited the appeal to minimize the uncertainty surrounding the state court's jurisdiction to proceed on the Director's declaratory relief motion.[1]

## II

We begin, as we must, with our jurisdiction to consider this appeal. *See P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452, 455 (7th Cir. 2017). An order remanding a case to state court is a final order that is reviewable on appeal unless there is some other prohibition on review. *See Quackenbush v Allstate Ins. Co.*, 517 U.S. 706, 714–15 (1996); *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782 (7th Cir. 1999). In most cases removed from state court, 28 U.S.C. § 1447(d) provides such a constraint by prohibiting review "on appeal or otherwise." Section 1447(d), however, provides an exception for "an order remanding a case to the State court from which it was removed pursuant to section 1442." HHS sought removal under § 1442, therefore, we may consider this appeal. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808 (7th Cir. 2015). Because the remand order in this case is reviewable, the certification of the remand order imposes no independent bar on either our jurisdiction or the district court's jurisdiction. In reaching this conclusion, we join the three other circuits that have considered this issue. *See Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005); *Hudson United Bank v. LiTenda*

---

[1] HHS moved this court to stay the remand, but we denied the motion because the district court had already certified its remand orders and the case had returned to state court; therefore, there was nothing for this court to stay. *See Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 154 n.6 (3d Cir. 1998).

*Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998); *In re Digicon Marine, Inc.*, 966 F.2d 158, 160-61 (5th Cir. 1992). Secure in our jurisdiction over this appeal, we move to the merits.

### III

HHS first argues that the district court erred in concluding that it lacked subject-matter jurisdiction over this case under the federal officer and agency removal statute, 28 U.S.C. § 1442. Removal under § 1442 creates an exception to the "well-pleaded complaint" rule and allows removal of a case that presents a federal question beyond the narrow confines of the complaint, including a case in which an officer or agency can raise a "colorable" federal defense. *See Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999); *Rodas*, 656 F.3d at 616-17.

Because this case centers on the text of § 1442, we set out the relevant parts of that statute in their entirety:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

….

(d) In this section, the following definitions apply:

> (1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

Therefore, § 1442 allows removal of any proceeding that meets the following requirements: (1) the proceeding must be a "civil action," (2) the civil action must be "against or directed to" the removing party, (3) the removing party must be one of the entities listed, (4) and the civil action must be "for or relating to any act under color of such office." As previously mentioned, the Supreme Court has interpreted this last element as requiring a "colorable" federal defense. *See Acker*, 527 U.S. at 431; *Mesa v. California*, 489 U.S. 121, 129 (1989). On appeal, the Director does not contest that HHS is an agency of the United States, but she argues that it has not met the other three elements.

## A

We start with the element that the district court found dispositive—whether the motion for declaratory relief is a "civil action." The district court opined that HHS's removal "appears to fall within [§ 1442(d)(1)], but [that] a closer look at the legislative history reveals the distinct purpose behind Congress's amendment." In the court's view, that purpose was aimed at ancillary civil actions "pertaining to pre-suit discovery and specifically those affecting Federal officers." The court relied on legislative history showing that Congress was particularly concerned with an attempt to seek discovery from a congresswoman without having filed a suit against her. *See* H.R. Rep. 112-17, at 3–4, *reprinted in* 2011 U.S.C.C.A.N. 420, 422–23 (describing *Price v. Johnson*, 600 F.3d 460 (5th Cir. 2010)). Because the motion for declaratory relief neither related to discovery nor affected an individual federal officer, and the district court considered itself duty-bound to construe the removal statute narrowly, the court concluded that the motion for declaratory relief was not an "ancillary proceeding," and therefore not a "civil action," within the meaning of § 1442.

On appeal, HHS argues that the district court erred in narrowly construing § 1442(d)(1). Even assuming that a narrow construction was necessary, HHS asserts that the plain text of the statute applies to the motion in this case, making it removable. We agree with both points.

We have yet to interpret the definition of "civil action" provided in 28 U.S.C. § 1442(d)(1), but three of our sister circuits have done so. Each concluded that a motion, not related to discovery, was removable separately from an underlying case not otherwise removable, and none of the circuit courts

conditioned removal on the involvement of an individual officer. *See Doe v. Office of Refugee Resettlement*, 884 F.3d 269, 273 n.8 (5th Cir. 2018) (state-court order requiring agency, as custodian of minor, to "facilitate access" to the minor is a civil action); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1249–1251 (9th Cir. 2017) (motion to expunge lien on settlement is a civil action); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Assoc. of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015) (motion to disqualify criminal defense attorney is a civil action).

The district court relied on our decision in *Morris v. Nuzzo*, 718 F.3d 660, 670 (7th Cir. 2013), for a narrow-construction rule applicable to removal statutes, but that case involved removal under 28 U.S.C. § 1441(b) based on diversity jurisdiction. *See id.* at 664. To the extent there is a presumption against removal in ordinary diversity cases, it does not extend to cases in which there is a contrary congressional policy favoring removal. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (involving the Class Action Fairness Act, 28 U.S.C. § 1332(d)). The Supreme Court has repeatedly found such a congressional policy in § 1442, and it has instructed courts that "this policy should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Instead, the Court has directed that "[t]he federal officer removal statute is not 'narrow' or 'limited,'" *id.* at 406, and the statute must be "liberally construed," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

Turning to the text of § 1442, it does not support the district court's conclusion that it lacked jurisdiction because the Director's motion was neither directed at an individual officer

nor related to discovery. The definition of "civil action" is independent of the nature of the party removing. Section 1442(a) uses the term "civil action" only once to refer to all the different entities and persons that may remove a case under the section, including individual officers, persons acting under those officers, federal agencies, and the United States itself. Due to this drafting choice, the text of the statute gives no reason to believe that the phrase "civil action" should have different meanings depending on whether the defendant is an officer or an agency.

The text of the statute also gives no reason to limit removal only to discovery disputes. The statute applies to any proceeding seeking a "judicial order, *including* a subpoena for testimony or documents." 28 U.S.C. § 1442(d)(1) (emphasis added). Words like "including" generally broaden the scope of a statute. *See Samantar v. Yousuf*, 560 U.S. 305, 317 & n.10 (2010). Accordingly, the only question is whether the Director is seeking a judicial order, and we are certain she is because her request is for a "declaratory judgment or order" per 735 ILCS 5/2-701.

Because the Director seeks an order declaring her right to money withheld by HHS, her motion requesting that order is an "ancillary proceeding" and, therefore, a "civil action" within the plain text of § 1442. There is no need then to delve into the legislative history. *See Singh v. Sessions*, 898 F.3d 720, 725–26 (7th Cir. 2018).

**B**

Next, the motion for declaratory relief is also "against or directed" to HHS within the meaning of § 1442. The district

court correctly recognized that the liquidation of Land of Lincoln (as a whole) was not a civil action "against or directed to" HHS, or any other part of the federal government. The government merely has an interest in the proceeding that does not, inherently, make it a party. *See United States v. Rural Elec. Convenience Co-op Co.*, 922 F.2d 429, 434–35 (7th Cir. 1991). The Director contends that this ends the inquiry. If Congress wanted to allow agencies to remove only portions of proceedings, the Director reasons, it could have worded 28 U.S.C. § 1442 as it did in § 1452(a), which allows removal of "any claim or cause of action."

The Director's position has two faults. First, it wrenches the district court's reasoning from its context. As the court correctly explained, "removal could only be proper if contemplated as arising from an ancillary proceeding [and] Section 1442(a) does not otherwise provide that DHHS can remove the action as a non-ancillary proceeding." This part of the district court's analysis is correct because this case is removable only if it is an ancillary proceeding. The district court erred solely in its determination that this case was not an ancillary proceeding.

Second, we cannot ignore the plain meaning of the statute because Congress could have, arguably, made the statute's meaning even plainer. (Though we also question the Director's premise and doubt that the language in § 1452 would be clearer in this context because a motion is not a "claim or cause of action," but it does seek a "judicial order.") Regardless, "[t]he mere possibility of clearer phrasing cannot defeat the most natural reading of a statute." *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 416 (2012). The language governing removal of ancillary proceedings states that "[i]f

removal is sought for a proceeding described in the previous sentence, and there is no other basis of removal, *only that proceeding may be removed to the district court*." 28 U.S.C. § 1442(d)(1) (emphasis added). If "only" some portion of a proceeding is removable, then that necessarily implies that other portions of that proceeding are not. *See Doe*, 884 F.3d at 273 n.8. We agree with the Ninth Circuit that any other reading of the statute would "create an incentive for forum shopping" and make the availability of a federal forum unduly dependent on the manner by which a litigant chooses to challenge federal action—whether in an independent suit or through a motion ancillary to some other claim. *Goncalves*, 865 F.3d at 1251.

Having concluded that the statute allows removal of only part of a proceeding, we turn to whether the Director's motion is "against or directed to" HHS. That much is plain from the fact that the Director served HHS with a notice of the Director's motion, and HHS must respond to the motion. That the Director may eventually ask the court to order HHS to produce the withheld money only bolsters this conclusion.

### C

We also agree with HHS that it has alleged a colorable federal defense. HHS specifically argues that the Director's motion cannot proceed because it has not waived its sovereign immunity. It asked the district court to dismiss the case for lack of subject-matter jurisdiction and now asks this court to do so in the district court's stead. To conclude that removal was proper, we need find only a "colorable" or "plausible" federal defense, because removal is "concerned with who makes the ultimate determination, not what that determination will be." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir.

2012). We leave the merits of the federal defense in the capable hands of the district court. *Id.*

The Director contends that HHS's claim to sovereign immunity is baseless. In doing so, the Director does not rely on any waiver of sovereign immunity, express or implied, but instead argues that the liquidation proceeding does not implicate sovereign immunity at all, because it is a proceeding *in rem*.

The Director overstates her case. "[T]here is no general *in rem* exception to principles of sovereign immunity." *Zych v. Wrecked Vessel Believed to be the Lady Elgin*, 960 F.2d 665, 669 (7th Cir. 1992). The Supreme Court concluded as much in *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38 (1992), where it held that 11 U.S.C. § 106(c), which acted as a limited waiver of the United States's sovereign immunity in bankruptcy cases, did not waive its immunity for monetary liability. *Id.* at 34–37. After concluding that the statute did not act as a waiver, the Court expressly rejected the respondent's fallback position that "a bankruptcy court's *in rem* jurisdiction overrides sovereign immunity." *Id.* at 38.

Like the claims involved in *Nordic Village*, it is not clear that *in rem* jurisdiction extends to the claims in this case. The Director seeks "to recover a sum of money, not 'particular dollars.'" *Id.* Though we explained in *Blackhawk Heating & Plumbing Co.* v. *Geeslin*, 530 F.2d 154, 158 (7th Cir. 1976), that it was "of no consequence" to the *in rem* nature of the proceeding "that the Illinois court does not have actual physical possession" of the assets of a liquidating insurance company, *Blackhawk Heating* involved property—securities held in escrow—not a monetary claim. *Id.* at 155, 158 n.5. It is "plausible"—the burden that HHS must meet to remove this case—

that the reasoning of *Blackhawk* is confined to that situation. No one in that case, for example, doubted that the district court had jurisdiction to enter judgment in the underlying litigation, even though the relevant liquidation proceedings had begun nine months before the district court entered judgment. *See id.* at 156. The district court lacked only the "ancillary jurisdiction" to *execute* that judgment through a petition to turn over the securities. *Id.* at 158. The two claims—one for a monetary judgment and the other for turnover of assets— "retained a separate identity." *Id.*; *cf. Fischer v. Am. United Life Ins. Co.*, 314 U.S. 549, 554–55 (1942) (holding that "determination … of the rights of the parties in the *res*" does not interfere with a different court's jurisdiction over that *res*). Similarly, Land of Lincoln appears never to have doubted that the Federal Circuit or the Court of Federal Claims had the authority to order HHS to pay its Risk Corridor debt, even while the company was under liquidation. *See Land of Lincoln*, 892 F.3d at 1185-86.

Next, the Director argues that the Supreme Court abrogated the reasoning of *Nordic Village*, and therefore *Zych*, in the later case of *Central Virginia Cmty. College v. Katz*, 546 U.S. 356 (2006). In *Katz*, the Court held that certain proceedings that were "ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction … did not implicate state sovereign immunity." *Id.* at 371. It implied that a "mere declaration" was one such order, *id.*, but it recognized that other orders, including an order enforcing that declaration through a turnover action, "might … involve *in personam* process," even though they were "ancillary to and in furtherance of the court's *in rem* jurisdiction." *Id.* at 372. In refusing to decide whether a turnover action implicated the state's sovereign immunity, the Court cited *Nordic Village* with approval. *Id.* at 372 n.10. In the

end, the Court held that the state's immunity—to whatever extent it existed—had been waived by the ratification of the bankruptcy clause. *Id.* at 373.

Even to the extent that the Director seeks a "mere declaration," HHS's claim to sovereign immunity remains colorable. A contrary conclusion would imply that both statutes that create and court decisions that find waiver of the federal government's sovereign immunity were wholly unnecessary, including the version of 11 U.S.C. § 106(c) interpreted in *Nordic Village*. The Court read that section to abrogate the government's sovereign immunity with respect only to "'declaratory and injunctive'—though not monetary—relief against the Government." *Nordic Village*, 503 U.S. at 35. In doing so, the Court collected cases from the courts of appeals in which the government had, prior to the enactment of § 106(c), asserted its immunity even to orders declaring debts dischargeable. *Id.* at 36. Likewise, our own case rejecting that argument also relied on a waiver of sovereign immunity, albeit an implied one. *See McKenzie v. United States*, 536 F.2d 726, 728 (7th Cir. 1976). We think neither the Court's interpretation of § 106(c) in *Norris Village* nor its in-depth analysis of the history of the bankruptcy clause in *Katz* were dicta, as the Director implies with her categorical rule that *in rem* jurisdiction does not offend sovereign immunity. Indeed, the Supreme Court continues to reject such a categorical rule, even after *Katz*. Just this past year, the Supreme Court issued an opinion recognizing—in the context of an Indian Tribe's sovereign immunity—that a suit to quiet title's *in rem* nature was not dispositive of the tribe's sovereign immunity, and instead its previous holdings were based on statutory interpretation. *Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1652 (2018). Both Congress

and the courts have spilled too much ink on this issue to con-
clude that HHS's claim to immunity is not "colorable."

Because HHS met the final element necessary for removal
under § 1442, we conclude that the district court erred in re-
manding this case for lack of removal jurisdiction.

## IV

That removal was proper does not end this appeal because
the district court decided that, even if it had erred in constru-
ing § 1442, it would nevertheless abstain from hearing the
case. We review the district court's decision to abstain from
exercising its jurisdiction for an abuse of discretion. *Adkins
v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011). As we
have recognized, "[t]here is little or no discretion, however, to
abstain in a case that does not meet traditional abstention re-
quirements, and that determination is a question of law."
*Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d
319, 321 (7th Cir. 1991).

It is well established that federal courts have a "virtually
unflagging obligation … to exercise the jurisdiction given
them." *Colo. River Water Conservation Dist. v. United States*, 424
U.S. 800, 817 (1976). This duty arises from the "undisputed
constitutional principle that Congress, and not the judiciary,
defines the scope of federal jurisdiction within the constitu-
tionally permissible bounds." *New Orleans Pub. Serv., Inc. v.
Council of the City of New Orleans*, 491 U.S. 350, 359 (1989)
(*NOPSI*). There are, however, "'exceptional circumstances'
where denying a federal forum would clearly serve an im-
portant countervailing interest," including a "regard for fed-
eral-state relations." *Quackenbush*, 517 U.S. at 716. In such a
case, courts are put in the position of balancing "the strong

federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining 'uniformity in the treatment of an "essentially local problem.''" *Id.* at 728 (quoting *NOPSI*, 491 U.S. at 362). This balance "only rarely favors abstention," *id.*, and abstention is always "the exception, not the rule." *Colo. River*, 424 U.S. at 813.[2]

Here, the district court relied upon the abstention principle set out in *Burford v. Sun Oil Co.*, 319 U.S. 315. In *Burford*, the Sun Oil Company argued that the Texas Railroad Commission violated principles of due process when it issued an order granting Burford permission to drill oil wells on his land. *Id.* at 316–17. Texas had established a comprehensive and complex regulatory scheme for the allocation of these drilling rights centering on the Commission's broad discretion in administering this regulatory scheme. *Id.* at 320–25. Furthermore, the Texas legislature established a system of judicial review by its own state courts sitting in Travis County. *Id.* at 325. Though it was settled that the Commission's actions did not violate the Constitution, the federal courts had been "called upon constantly to determine whether the Railroad Commission ha[d] acted within the scope of statutory authority." *Id.* at 328 & n.24. Federal court review of the Commission's decisions inevitably led to "[d]elay, misunderstanding

---

[2] HHS contends that abstention cannot be allowed here because, under *Quackenbush*, a federal court can abstain only if it is being asked to order discretionary—i.e., equitable or declaratory—relief. 517 U.S. at 730. With some trepidation, we will take the Director at her word that she is seeking only declaratory relief, and with that assumption, *Quackenbush* does not lead to a categorical bar on abstention here.

of local law, and needless federal conflict with the State policy." *Id.* at 327. This interference with fundamental questions of state law and policy rose to the level that both the legislative and executive branches of Texas's government were responding to individual federal court decisions as they happened trying to fix the damage the federal courts were causing. *Id.* at 329 & nn. 25–26. In light of the "settled" and narrow constitutional issues, *id.* at 328, 331–32, the "basic problems of Texas policy" involved in every equitable decision, *id.* at 332, and the "expeditious and adequate" review available in the state courts, *id.* at 334, the Supreme Court affirmed the district court's decision to abstain from exercising its equitable powers over the dispute. *Id.*

The Supreme Court has generalized this standard in the intervening decades and clarified that *Burford* abstention is proper in only two circumstances. The first is "when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *NOPSI*, 491 U.S. at 361 (quoting *Colo. River*, 424 U.S. at 814). The second is "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* A court may abstain under this second type of *Burford* abstention "when principles of federalism warrant deference to a state's regulatory regime." *Adkins*, 644 F.3d at 504. Here, the district court correctly found that the first situation does not apply to this case, but nevertheless abstained under the second type of *Burford* abstention.

Relying on our decision in *Hartford Casualty Insurance Co. v. Borg-Warner Corp*, 913 F.2d 419 (7th Cir. 1990), the district

court focused on four factors in deciding to abstain: (1)
whether the suit is based on a cause of action that is exclu-
sively federal; (2) whether the suit requires the court to deter-
mine issues that are directly relevant to state policy in the reg-
ulation of the insurance industry; (3) whether state proce-
dures indicate a desire to create special state forums to regu-
late and adjudicate the issues; and (4) whether there are diffi-
cult or unusual state laws at issue. *Id.* at 425 (citing *Grimes v.
Crown Life Ins Co.*, 857 F.2d 699, 704–05 (10th Cir. 1988)). Re-
garding the first factor, the district court viewed the case as
arising principally under state law with HHS raising only fed-
eral law defenses. Next, the district court gave great weight to
Illinois's interest in maintaining a uniform liquidation process
and found that removal (and dismissal) of this case would
disrupt that uniform process and lead to piecemeal litigation.
Because the state court is competent to interpret federal law,
the district court reasoned that the federal government's in-
terest in removal was minimal. Also, the district court recog-
nized that Illinois's provision concentrating liquidation pro-
ceedings to only two specific chancery courts, *see* 215 ILCS
5/199, sufficed to create a special forum. The district court did
not opine on the fourth factor because the difficulty of state
law questions is irrelevant to the second type of *Burford* ab-
stention.

Finally, the district court considered the effect of the
McCarran-Ferguson Act, 15 U.S.C. § 1012, on this case. That
act provides that "[n]o Act of Congress shall be construed to
invalidate, impair, or supersede any law enacted by any State
for the purpose of regulating the business of insurance … un-
less such Act specifically relates to the business of insurance."
The district court declined to read that language to prohibit
the use of the removal statute entirely, as the Director argued,

but instead found the Act evinced a federal policy favoring abstention beyond the factors already considered.

Though we, like the Tenth Circuit, *see Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 896–97 (10th Cir. 2013), question the continuing validity of the *Hartford* factors after the Supreme Court's decisions in *NOPSI* and *Quackenbush*, we will nevertheless approach the analysis in the same way the district court did. Even under that standard, we conclude that the district court abused its discretion in abstaining because this matter does not meet traditional abstention requirements in the first instance.

**A**

Regarding the first factor, namely, the nature of the cause of action, the federal issues in this case eclipse any state issues that might arise. Therefore, under the ordinary rules of the Supremacy Clause, principles of federalism do not "warrant deference to the state's regulatory regime." *Adkins*, 644 F.3d at 504; *cf. Illinois Bell Tel. Co. v. Glob. NAPs Ill., Inc.*, 551 F.3d 587, 595 (7th Cir. 2008) (recognizing that state's implementation of federal law could not justify *Burford* abstention).

To clarify, this case involves two debts owed to and by a federal agency under a federal regulatory regime, and the court must decide whether that agency can, consistent with a federal regulation, offset the two debts. On the other hand, the only application of state law to this case is whether HHS violated the state-court order by offsetting its debt, which may or may not be "mutual" (and therefore permissible to offset) under state law. The determination of that question would necessarily require a court to answer antecedent federal questions, including, most importantly, whether the federal

agency enjoys sovereign immunity preventing the state court from deciding the state-law question in the first place. Moreover, to the extent state law overcomes contrary general federal law under the McCarran-Ferguson Act, that determination is itself a question of federal law, namely, the interpretation of the Act, *see SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69 (1959), and the contrary preemption provision of the Affordable Care Act, 42 U.S.C. § 18041(d).

Beyond whether questions of state or federal law predominate, Congress has already decided, as a policy matter under 28 U.S.C. § 1442, that HHS's federal defense should be decided in federal court. Abstention doctrines are not intended to alter that sort of policy choice. *See Adkins*, 644 F.3d at 497. As explained above, Congress's policy under § 1442 is that "federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham*, 395 U.S. at 407. Accordingly, the district court's recognition that "HHS seeks only to raise federal defenses," was a reason to exercise jurisdiction, not to relinquish it. Two courts of appeals have held that there is never any discretion to abstain in a case removed under § 1442, although both courts were considering different abstention doctrines. *See In re Commonwealth's Motion*, 790 F.3d at 475 n.10; *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994). In contrast, the Director points us to no case in which a court of appeals has affirmed abstention of a case removed under § 1442, and we have not found one. Nevertheless, we need not declare an inviolable rule because a presumptive one will suffice. A federal court should not abstain, absent the most extraordinary and exceptional circumstances, when the federal government has properly removed a case under § 1442. *Adkins*, 644 F.3d at 496 ("a federal court's ability to abstain from exercising federal jurisdiction 'is the

exception, not the rule,' and can be justified only in exceptional circumstances.") (citations omitted). This case does not present such extraordinary circumstances, so HHS's federal defense belongs in federal court. In addition, unlike the McCarran Amendment at issue in *Colorado River*, 424 U.S. at 819, we have in § 1442(d)(1) a federal policy in favor of piecemeal removal of ancillary proceedings because of the substantial import of federal defenses. Principles of *Burford* abstention are not designed as an "end run around" that policy. *See Adkins*, 644 F.3d at 497.

**B**

The district court also gave too much weight to Illinois's interests in a uniform liquidation proceeding and concentrated review of claims, while diminishing the complex federal policies and interests at play in this case. Removal of this one case is not "disruptive of state efforts to establish a coherent policy." *NOPSI*, 491 U.S. at 361. It is the opposite because the Director is asking the state court to interfere with a complex federal regulatory system.

Critically, the budget-neutral nature of the premium-stabilization programs—in particular the Risk Adjustment program in which Land of Lincoln owed money—means that HHS has already distributed the money it offset to other insurance companies which, like Land of Lincoln, needed that money to maintain solvency. HHS informs this court that there are more than twenty insurance companies throughout the country that are in rehabilitation or liquidation proceedings and whose debts HHS has been offsetting to the tune of hundreds of millions of dollars. Exposing HHS's actions—whether lawful or not—to the inconsistent decisions of so many different state fora could have dire consequences for

the complex regulatory framework of the Affordable Care Act, if not the insurance market as a whole. The federal government's interest in the relative uniformity of the federal courts is substantial.

In contrast, we do not see how removal of this case will disrupt the liquidation in Illinois court. The court can continue to freely distribute Land of Lincoln's assets to creditors according to the state's priority scheme, albeit with $27 million less to distribute for now. The Director is justifiably worried that this money may not be distributed to Illinois policyholders if this case were removed. This is a lofty concern, and we do not disparage the Director's desire to protect the people of her state. Nonetheless, whether the money ultimately goes to the benefit of the people of Illinois is a question of substantive law. Equity, the origin of abstention principles, *see Quackenbush*, 517 U.S. at 717–18, has nothing to do with the question of sovereign immunity, which does not look to the "hardship" caused by immunity, but only to what Congress has or has not allowed, *see Soriano v. United States*, 352 U.S. 270, 277 (1957). The Director is correct that Illinois courts must respect federal law to the same extent as federal courts, but, especially given the policy favoring removal of federal defenses in § 1442, there is no reason to prefer the state court to the federal court to resolve this same substantive question. *Cf. Prop. & Cas. Ins.*, 936 F.2d at 322 n.5 (noting that it makes little sense to abstain to a court that would apply foreign law). Moreover, unlike the danger in non-uniform treatment of HHS's offsets among the several state court systems, there is negligible impact on the uniformity of the liquidation if HHS removes this case on a sovereign immunity defense. The need for uniform treatment implies that the parties are similarly situated, but Land of Lincoln's other creditors and debtors are

not the federal government. We said in *Hartford* that "where similar suits would not be disruptive of the rehabilitation process, a federal court would have to hear the case." 913 F.3d at 426. If the federal government, in its unique posture as a sovereign, can remove this case and jump in line, there is no implication from that conclusion that other creditors could do the same, thereby disrupting and diminishing the whole estate.

The McCarran-Ferguson Act does not change our analysis. In *Hartford*, we relied on the Act to abstain from deciding "the amount and existence of liability that an insolvent Illinois insurer owes to Hartford." 913 F.2d at 426. Here, both the amount and the existence of liability are federal questions and they are not in dispute. We, therefore, do not need to "invade the province of the state rehabilitation court in deciding damages." *Id.* at 427. We also think the district court was wise to reject the Director's argument that the Act prohibited removal outright. The courts of appeals have consistently rejected the argument that the Act prohibits diversity removal of insurance-related claims. *See, e.g.*, *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 389 (4th Cir. 2012) (collecting cases). They have reached this conclusion even in opposition to express state insurance laws prohibiting removal, in part because "it cannot fairly be said that choice of forum between state and federal court, within a state" is "integral" to the policy relationship or the substantive concerns of the McCarran-Ferguson Act. *Int'l Ins. Co. v. Duryee*, 96 F.3d 837, 840 (6th Cir. 1996). We join these courts in concluding that removal does not "invalidate, impair, or supersede" any law regulating insurance, when the same substantive law will be considered in either forum. *See Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*,

421 F.3d 835, 843 (9th Cir. 2005), *amended*, 433 F.3d 1089 (9th Cir. 2006).

## C

Finally, we can dismiss the third and fourth *Hartford* factors out of hand. The existence of a special forum "is a prerequisite of, not a factor in, the second type of *Burford* abstention." *Prop. & Cas.*, 936 F.2d at 323. Illinois's system concentrating review in specific state courts passes this threshold, *see Adkins*, 644 F.3d at 504, but meeting the bare minimum requirements is not a reason itself to abstain. *Burford* does not require abstention in all cases in which there is a specialized forum, or even when federal adjudication will conflict with a regulatory policy. *See NOPSI*, 491 U.S. at 362. In *NOPSI*, for example, the Supreme Court thought abstention inappropriate in any case in which there is no need for an "inquiry beyond the four corners" of the agency's actions. *Id.* at 363. Here, HHS contends that sovereign immunity prevents the state court from preventing its setoff, haling it into court, or forcing it to pay money to the liquidation estate. To decide whether that defense should be sustained will "not demand significant familiarity with, and will not disrupt state resolution of, distinctively local regulatory facts or policies." *Id.* at 364 (emphasis omitted). On the final factor, the Director has not pointed to any difficult or unusual state laws at issue in this case, to whatever extent that factor remains relevant outside the confines of the first type of *Burford* abstention.

## V

The parties finally dispute the appropriate remedy, now that we have found that the district court should not have remanded this case to state court for lack of removal jurisdiction

or on abstention grounds. As we previously noted, HHS argues we should direct the district court to dismiss the case forthwith rather than remand for further proceedings. We decline to do so because the merits of HHS's defense have not been resolved. The district court, in the first instance, must evaluate HHS's sovereign immunity to the Director's motion, as well as the propriety of dismissal under the doctrine of derivative jurisdiction, which despite its name is "a procedural bar to the exercise of federal judicial power" and does not go to the court's subject-matter jurisdiction. *Rodas*, 656 F.3d at 619. The Director could, if she so chooses, amend her motion for declaratory relief to constitute a proper complaint that engages with the federal court's jurisdiction. *See id.* at 625. Such a modification would cut out the intermediate step between dismissal of this case and the filing of a new one, and HHS itself admits that an action seeking relief other than money damages could proceed in the district court under the Administrative Procedure Act, 5 U.S.C § 702, which waives the United States's sovereign immunity to declaratory relief in the federal courts.

On the other extreme from HHS's request that we dismiss the case outright, the Director argues that under any circumstance this case belongs in state court, even if it is removable, the district court erred in abstaining, and the doctrine of derivative jurisdiction bars the case. She relies principally on 28 U.S.C. § 1447(c), which requires a district court to remand if at any time it determines it lacks subject-matter jurisdiction.

Section 1447(c) does not apply to this case by its own terms. Although HHS made the error of filing its motion to dismiss for lack of derivative jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we have already explained that

derivative jurisdiction is not an issue of subject-matter jurisdiction. *See Rodas*, 656 F.3d at 619. Furthermore, the entire principle behind derivative jurisdiction is that that the case was not "properly constructed" because it was brought in the wrong forum. *Id.* at 624. Remanding to a forum deemed wrong is nonsensical. Even if we believe the state court would be duty-bound to dismiss the case, the Director's procedural mechanism for reaching that result would undermine the strong federal interest in having federal defenses adjudicated in a federal forum regardless of their ultimate merit. Just as a losing federal defense may be resolved in federal court, so too must a winning defense that leads to a situation in which "[t]he suit would be removed only to be dismissed." *Willingham*, 395 U.S. at 407.

Because we base our holding on the conclusion that HHS's claim of sovereign immunity is only "plausible," we leave to the district court the final evaluation of the defense. The parties framed this question as primarily concerned with whether this motion is *in rem* or *in personam*, but failed to fully explore the consequences of this antecedent issue, and in particular the limits of "the prior exclusive jurisdiction doctrine." *Goncalves*, 865 F.3d at 1253; *see also United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 97 (7th Cir. 1987); *Blackhawk Heating*, 530 F.2d at 157; 13F Charles Alan Wright, et al., Federal Practice and Procedure § 3631 (3d ed.). To summarize the doctrine briefly, two suits, both of which are *in rem* or *quasi in rem* and require the courts to have possession or control of the same property, cannot proceed at the same time, and the second court must yield to the first. *United States v. Bank of N.Y. & Tr. Co.*, 296 U.S. 463, 477–78 (1936). Though we have concluded that it is plausible that this removed mo-

tion for declaratory relief is not entirely *in rem* for several reasons, if the district court finds otherwise, then it must determine whether the state court has prior jurisdiction over the same *res*. If both actions are *in rem*, the court must dismiss this case for lack of jurisdiction independent of any abstention principal or the validity of removal. But if one of the two cases is not *in rem* or *quasi in rem*, there is no jurisdictional bar and the case should stay in federal court. *See Fischer*, 314 U.S. at 555; *Kline v. Burke Const. Co.*, 260 U.S. 226, 229–30 (1922).

Finally, we recognize that, just as HHS has a plausible argument for sovereign immunity, the Director has a non-frivolous argument that HHS is improperly jumping in line in Land of Lincoln's liquidation to the detriment of policyholders. *Cf. U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 508–09 (1993) (holding that the McCarran-Ferguson Act precluded the United States from obtaining priority over policyholders or administrative expenses in insurance liquidation). Though the Director cites *Fabe* for the proposition that the United States may, if it so chooses, submit its claims to a state liquidation proceeding without undermining its sovereign immunity, we note that even in that case the question presented to the Supreme Court originated in federal court. *See id.* at 495. We express no opinion on the merits of the Director's interpretation of the Act, we hold only that HHS has the right to have that question decided in federal court, whether it be in this case or another.

## VI

Because the district court construed its removal jurisdiction too narrowly and erred in abstaining, this case should have remained in federal court. Accordingly, we **REVERSE**

the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.